Dows *v.* Morewood.

SAME TERM.     *Before the same Justices.*

10   183
139a 125

Dows and CARY *vs.* MOREWOOD and others.

On the 22d of October, 1845, H. & L. H. being indebted to the plaintiffs in the sum of $2,100 upon a draft accepted and afterwards paid by the plaintiffs, gave to the latter a receipt stating that they had received in store at P., 86 cans of oil of peppermint marked " D. & C., New-York," containing 1687 lbs.; and which they thereby pledged and transferred to the plaintiffs, and agreed to ship the same to them, *to be sold by them to pay the said draft* thereto annexed, subject to no charge except transportation. Other drafts were afterwards drawn upon the plaintiffs, at different times, and accepted and paid by them, and similar receipts were given by H. & L. H. The plaintiffs purchased bottles in New-York, which were made expressly for them, and sent them to H. & L. H. to pack the oil. In May, 1846, one of the plaintiffs went to P., where H. & L. H. resided, and talked with them about the oil, and the receipts, and urged them to pack the oil as soon as possible. H. & L. H. pointed out the oil, in tin cans, in an adjoining room, and admitted their obligation to deliver it. On the 9th of June, H. & L. H. said they had received a letter from the plaintiffs and were going to G. to see the oil shipped. They went to G. and shipped on board a canal boat a quantity of oil, in boxes marked " H. & L. H., care of G. B. M. & Co," (the defendants.) The defendants subsequently received from the captain of the boat 21 boxes of oil thus marked; and the plaintiffs replevied the same. The bottles sent by the plaintiffs to H. & L. H. had labels on them like those replevied. No particular cans of oil were set apart for

the use of the plaintiffs, when the receipts were given; and the only evidence that any were so set apart afterwards, was that arising from the above facts. *Held* that the proof was sufficient to go to the jury, on the two questions, whether any oil was so set apart in May and June, and whether that oil was the same that was received by the defendants.

*Held also* that the evidence was such as to justify the jury in finding that H. & H. L. had set apart, at G., the oil in question for the plaintiffs, and that it had come to the defendants' hands.

*Held further*, that the defendants, having upon demand made, refused to deliver the oil to the plaintiffs; without setting up any lien thereon, they waived the right to set up a lien afterwards for freight, costs and charges, or for previous advances; and that they could not be allowed to deny the plaintiffs' title, before suit brought, and afterwards defeat a recovery by setting up a *concealed* lien.

In the case of a running account between parties, where there are various items of debit on one side and of credit on the other, and neither party has applied the payments to any particular debit, they are to be applied first to satisfy the debts oldest in time.

The law will, in such a case, also apply the payments to that debt a relief from which will be most beneficial to the debtor, as, for example, acceptances for which an instrument in the nature of a mortgage, or pledge, of personal property, as given.

THIS was an action of replevin, for detaining 21 cans of oil of peppermint, containing about 1300 lbs. received by the defendants from the firm of H. G. & L. B. Hotchkiss. On the trial the plaintiffs obtained a verdict for six cents damages and six cents costs ; and the cause came before this court on exceptions taken by the defendants, at the circuit.

*H. S. Dodge*, for the plaintiffs.

. *J. Miller*, for the defendants.

*By the Court*, MITCHELL, J. On the 22d of October, 1845, H. G. & L. B. Hotchkiss drew their draft at four months for $2,100 on the plaintiffs, who accepted the same, and paid it at maturity. On the same day the Messrs. Hotchkiss gave to the plaintiffs a receipt, stating that they had received in store, at Phelps, 86 cans of oil of peppermint marked " D. & C., New-York," containing 1687 lbs. oil of peppermint, and which they

---

Dows *v.* Morewood.

---

thereby pledged and transferred to the plaintiffs, and agreed to ship the same to them *to be sold by them to pay the said draft* thereto annexed—subject to no charge except transportation. On the 6th of November, 1845, a like draft at four months, for $2,250, was drawn and accepted by the plaintiffs and paid at maturity, and a like receipt given by the Messrs. Hotchkiss for 90 cans, containing 1831 lbs. oil of peppermint. On the first of April, 1846, a like draft at three months for $1100 was drawn and accepted, but never paid, and a like receipt was given for 21 cans oil of peppermint containing over 400 lbs., and also for some flour and other articles. On the 30th of June, 1846, the plaintiffs replevied from the defendants the 21 boxes of oil of peppermint, for which this action was brought. It was in 1008 bottles and weighed 1387 lbs. net.

The plaintiffs showed that they had purchased bottles in New-York, of the kind and size of those replevied, and sent them to the Messrs. Hotchkiss for the plaintiffs' oil. That they were made expressly for the plaintiffs, though the witness had no *certain* knowledge that they were the same as those replevied. They had labels on, similar in size, print and color to those replevied; that the labels were sent with the bottles to the Messrs. Hotchkiss. A witness for the plaintiff stated that in May, 1846, he went with Mr. Cary to Mr. Hotchkiss about the oil ; that they talked about the receipts and the oil : that Hotchkiss pointed out the oil, in tin cans, in a room in the rear of his office at Phelps, and said the bottles got there the day before. They went to the barn and saw the men washing the bottles. Mr. Cary wanted Hotchkiss to pack the oil as soon as possible. He had the receipts then on the desk, and they looked at them, for the purpose of getting the number of cans the receipts called for. They then left. On the 9th of June following, the witness again called on Hotchkiss, and asked him if he had shipped the flour and oil as talked of by Mr. Cary and the witness when they were there before. He said he had not ; that he had received a letter from the plaintiffs that morning and was going to Geneva to *see it shipped.* The witness and Hotchkiss rode to Geneva together ; the witness staid there a short time and

helped put the cases of oil on board the boat H. D. Hatch, and left Hotchkiss there, who was keeping an account of the weight and number of the bottles shipped. The same boat, the H. D. Hatch, arrived in New-York, and in June, 1846, the defendants received from the captain 21 boxes peppermint oil, marked *H. G. & L. B. Hotchkiss, care G. B. Morewood & Co.* and gave the captain a receipt for it.

No particular cans of oil were set apart for the use of the plaintiffs, when the receipts were given; and the only evidence that any were so set apart, afterwards, was that above detailed. The proof was sufficient to go to the jury, on the two questions whether any were so set apart for the plaintiffs in May and June, and whether that oil was the same received by the defendants and replevied in this action.

The Messrs. Hotchkiss were bound, by their receipts, to deliver 3918 lbs. of oil of peppermint to the plaintiffs. The plaintiffs shipped to the Messrs. Hotchkiss bottles and labels like those replevied, to pack this oil; then one of the plaintiffs called on H. with the receipts, and spoke of the oil and receipts, and asked that the oil should be packed as soon as possible. And H. recognizing his obligation to deliver the oil, pointed out oil in cans in an adjoining room; and when afterwards asked if he had shipped the oil, as Cary desired, said he was then going to Geneva to ship it; and he did go to Geneva and began shipping it by the boat H. D. Hatch, when the witness left him engaged in that business. And accordingly 21 boxes came by that boat, in due course, and were received by the defendants, with the names of the Messrs. Hotchkiss on them. With this evidence the jury could hardly draw any other conclusion than that the Messrs. Hotchkiss had set apart, at Geneva, this oil for the plaintiffs, and that it had come to the defendants' hands. It had been demanded of the defendants before the suit was brought. The judge was correct in refusing to nonsuit the plaintiffs.

The defendants produced evidence on their part, and when the testimony was closed requested the judge to charge according to nine different points stated by them. 1. That the plaintiffs could not recover without showing that the oil was set apart for

Dows v. Morewood.

their use; and the judge so charged. 2. That there was no evidence that it had been so set apart. This we have considered before, and the judge correctly left it to the jury. 7. That the defendants had a lien for freight, costs and charges, and that the plaintiffs were not entitled to recover until such lien was discharged. The plaintiffs had made a demand of the oil, before suit brought, and the defendants refused to deliver it; admitting that it was in their possession. They did not then set up any lien. By their absolute refusal to deliver, without any qualification, they waived the right to set up any lien which they had not previously communicated to the plaintiffs. They can not be allowed to deny the plaintiffs' title before suit brought and afterwards defeat a recovery by setting up a *concealed lien*. (*Everitt v. Saltus*, 15 *Wend*. 474, *affirmed* 20 *Id*. 268.)

This is also a sufficient answer to the 6th point, in which the defendants insisted that they had a right to retain the goods until their claim for advances made to the Messrs. Hotchkiss on previous consignments of goods to them should be satisfied. The judge, however, charged more liberally for the defendants, and said they would have a lien in such case if the business of *making advances* and *receiving goods* was a continuous one. The evidence was that Dows called on the defendants in the middle of June, 1846, and asked them if they had advanced on the oil, and they said *they had not made any advances on it*. Dows said the plaintiffs had advanced to the full value of the oil, or more, and had no objection to the defendants' having the oil if they would reimburse to the plaintiffs their advance; and the defendants said they would give notice to the plaintiffs before they would make any advance. All this is utterly inconsistent with any claim then existing in favor of the defendants, for any advances.

The Messrs. Hotchkiss consigned oil to the defendants to be sold on commission. The defendants shipped the oil to London, for sale, to Hetherington & Co. and according to the account of that firm, which was admitted to be correct, *that firm* made the advance through G. B. Morewood the defendant, and charged it to the Messrs. Hotchkiss in account directly between the Lon-

don house and Hotchkiss; so that the defendants had their claim against the London firm, and that firm, and not the defendants, against the Messrs. Hotchkiss. The general statement by the witness Oliver, that advances were made by the *defendants* to the Messrs. Hotchkiss, to the amount of $2100, must be taken subject to the account to which he referred, and which was admitted to be correct. The question passed on by the judge, therefore, did not arise; nor did the one suggested by the defendants' sixth point arise.

On the 8th point the judge charged in favor of the defendants. The 9th related to the measure of damages to be allowed to the defendants in case they had succeeded. As that contingency did not occur, that becomes immaterial.

5th point. There had been mutual dealings between Dows and Cary on one side, and the Messrs. Hotchkiss on the other; and accounts were produced at the trial, showing the nature and state of those accounts. The plaintiffs advanced largely to the Messrs. Hotchkiss, and apparently generally trusted for their reimbursement to the credit of the Messrs. Hotchkiss, or to goods sent or to be sent by them on sale. On the 1st of December, 1845, the Messrs. Hotchkiss owed the plaintiffs nearly $4000 cash balance, and on drafts accepted by the plaintiffs but to fall due between that and June following, $37,000 more. The plaintiffs may however have held goods of the Messrs. Hotchkiss unsold, at this time; as their accounts only credit actual sales. Another account, brought down to 1 Feb. 1847, shows due to the plaintiffs at that time about $12,000 in cash, and over $7000 in drafts accepted and due but not paid. This last account includes the three drafts for which the receipts were given as first above mentioned, and charge the Messrs. Hotchkiss with them. According to it the amount for which the Messrs. Hotchkiss were debtors on the 9th of March, 1846, when the 2d draft was due, was $21,986,74, and by the 23d of June following they had paid $36,845,93. If these were the only items of the account, it would be plain that the plaintiffs had not only been paid these two drafts, but were largely overpaid. But by the 23d of June, 1846, the gross indebtedness of the Messrs. Hotchkiss, including

Dows v. Morewood.

the $1100 draft, and other acceptances not yet due, had increased from $21,986,74, which it was on the 9th of March, 1846, to over $62,000.   The draft of $1100 did not fall due until July 3d, 1846.

The defendants requested the judge to charge that the credits to the Messrs. Hotchkiss were to be applied to the satisfaction of the charges against them, in the order of time in which they accrued; and that if the credits exceeded the acceptances and previous charges, then the acceptances were paid, and the lien on the goods ceased.   The principle of the defendants was, that in a running account like this, when neither party has applied the payments, they are to be applied first to satisfy the debts oldest in time.   In this they are sustained by the cases of *Seymour* v. *Van Slyck*, (8 *Wend.* 403, 417, 418;) *Allen* v. *Culver*, &c. (3 *Denio*, 293;) and *Clayton's case*, (*Merivale*, 585, and 604 *to* 611.)   Judge Jewett says, (3 *Denio*, 293,) "In the case of a running account between parties, when there are various items of debit on one side, and of credit on the other, occurring at different times, and no special appropriation of payments constituting the credits, has been made by either party, the successive payments and credits are to be applied in discharge of the items of debit antecedently due in the order of time in which they stand in the account.   In other words, each item of payment or credit is applied in extinguishment of the *earliest* items of debt, until it is exhausted."

Judge Cowen, in *Pattison* v. *Hull*, (9 *Cowen* 747,) sustained another principle applicable to this case ; that where the parties make no application of the payments, the law will apply them to that debt, a relief from which will be most beneficial to the debtor ; as if the debts be a mortgage and account, or judgment and account, the law will apply them to the mortgage or judgment.   On that principle, the first payments here would go to satisfy the acceptances for which an instrument in the nature of a mortgage, was given, viz. : those secured by the receipts in this case.

But while the judge admitted the general principle, he declined charging on that point, as requested, and said it was

Dows *v.* Morewood.

not so if the oil was set apart, designated or marked. In this qualification he overlooked the character of these receipts. They acknowledge the receipt of certain cans of oil, and profess to pledge and transfer them to the plaintiffs, and the receiptors agree to ship the oil to the plaintiffs for sale. And it is expressly declared for what purpose, viz. : "to pay the draft annexed, to the plaintiffs." Clearly if the Messrs. Hotchkiss had taken up those drafts, the plaintiffs would have had no longer any claim to the oil. The receipt showed on its face, that it was given as security merely, and that not for a general indebtedness, but for the payment of a certain draft. If the plaintiffs had failed to pay the drafts and allowed them to be protested, and so compelled the Messrs. Hotchkiss to pay them, it could not be supposed that the plaintiffs could still replevy the oil. When the Messrs. Hotchkiss forwarded funds or merchandise, which was credited in the running account, so as in law to satisfy the drafts, they as effectually paid them as if they had taken up the drafts. Then it was quite immaterial whether the oil had been set apart or not. Even if the Messrs. Hotchkiss had *originally* set apart that precise quantity of oil, and delivered it to a third party to hold according to the terms of the receipts, such third party would not be justified in delivering the oil to the plaintiffs, if the Messrs. Hotchkiss had paid the drafts. Nor could the plaintiffs, in such case, recover it from such third party.

The charge and refusal of the judge, in the 5th point, were correct, and affected the merits, at least as to the oil for which the first two drafts were given. Under the charge of the judge, the jury, if they believed the oil set apart, necessarily found for the plaintiffs for all the oil, as well for that covered by the first two receipts, and which was paid for as above stated, as for the oil mentioned in the 3d receipt.

The exception taken by the defendant to the several *refusals* and decisions of the judge, was broad enough to include his *decision* on this point. His charging that the law was not as the defendants requested him to state it, unless the oil was set apart, was also a *refusal* to charge as the defendant requested.

Dows *v.* Morewood.

The accounts also show that the $1100 draft was not paid by the plaintiffs, even on the 13th of February, 1847; that draft and three others, amounting together to over $7000, being marked expressly "not paid;" and the plaintiffs in their letter of 13th February, 1847, stating that those drafts are *under protest.* In their letter, also, of June 20th, 1846, they stated that they had been compelled to suspend. This suspension, probably, led the Messrs. Hotchkiss to send their oil to the defendants, rather than to the plaintiffs.

The 3d and 4th points taken by the defendants, may be considered together. The 3d was, that if this oil was set apart, yet if the plaintiffs agreed that it should be sent to, and sold by the defendants on account of the Messrs. Hotchkiss, such agreement was a waiver of any lien on the oil. The judge may have refused so to charge, because he may have considered that the correspondence from which this agreement, if it existed, was to be inferred, showed that such agreement was conditional, viz.: that the oil should be sent to the defendants and sold, on account of the Messrs. Hotchkiss, but so that the defendants should repay to the plaintiffs the amount of their acceptances. For the same reason, also, he may have refused to charge as requested in the 4th point, that the agreement of the Messrs. Hotchkiss to allow the plaintiffs to be so reimbursed, and the subsequent refusal of the Messrs. Hotchkiss to do this, did not restore the plaintiffs' lien. To have charged the jury so, would only have misled them, if the plaintiffs had never agreed to waive their lien, except on condition of their being paid by the defendants, in place of the Messrs. Hotchkiss.

The only expressions in the correspondence which can be made to imply a waiver of the plaintiffs' lien, show that it was only a consent to *substitute* advances to be made to them from some other house, in place of their claim. "It is, if you are to get an advance upon this, very important to us that you do so before the 1st of May." "If you could realize the importance to us to have money, we think you would send the oil at once forward and get an advance on it;" especially as in the previous part of the letter, the plaintiffs engaged to have the oil packed here;

showing they expected to receive it. "We hope you will have your oil here in a short time. We are very much in want of the amount you can get advanced on it here." "We hope you will have your oil here at once, and get the advance on it, *so that we may have it.*" "We notice by your letter, that the oil you have shipped direct to Meyer & Morewood. Will your H. G. H. be here to attend to it, and *get the advance for us ?* If he can not be here should it not come to us *so that* we can get it as soon as it arrives. If H. G. H. won't be here, send us an order on Meyer for *the advance,* and a draft on Morewood & Co." The plaintiffs write on the 20th of June, 1846, to the Messrs. Hotchkiss, "you should have sent us an order on Morewood & Meyer to get the advance, and we wish you would do so at once. They will give us the advance on it, and on receipt of this, send us your order for it." If from any thing here a waiver of any existing lien is to be implied, it is only "so that" the advances be paid to the plaintiffs, and is a waiver with a limitation, and can not take effect, unless that limitation be complied with.

It may be, however, if the accounts show that the drafts were paid, that these letters, in connection with those accounts, would show that the plaintiffs did not claim any lien, but only a general right as creditors, to have property and funds remitted to them to pay their advances or liabilities for the Messrs. Hotchkiss. In other words, that they do not waive any lien ; and on the other hand, do not set up any lien. And it might also be, that if those letters and accounts had been produced before the plaintiffs rested, a nonsuit would have been proper. They do *seem* to indicate that the oil was to be forwarded from Geneva for general account of the plaintiffs, and not in consequence of, or in recognition of, any *lien* in their favor. That matter need not now be passed upon.

There should be a new trial ; costs to abide the event.