7   21
124   512

7   21
160   898.

---

## HANNA and Another v. PHELPS.

If a chattel be delivered to a party to receive from his labor and skill an increased value, he has, as a general rule, a specific lien for the amount of his compensation, if there is nothing in the contract inconsistent with the existence of such lien.

Nov. Term,
1855.

HANNA
v.
PHELPS.

The lien also exists, whether there be an agreement to pay a stipulated price for such labor and skill, or an implied contract to pay a reasonable price.

A person engaged in rendering lard and barreling the same for hire, has a specific lien for his labor and skill therein.

The lien of a bailee for his labor and skill bestowed upon an article, will be waived by a general refusal to deliver the property to the bailor, without alleging that he retains it for such lien.

The special term of the *Wabash* Circuit Court held in *June*, 1853, was held in conformity with section 3, p. 5, 2 R. S. 1852.

*Monday,*
*November 26.*

APPEAL from the *Wabash* Circuit Court.

DAVISON, J.—Assumpsit. The complaint is that *Phelps*, the plaintiff below, on the first day of *December*, 1849, delivered to *Hanna* and *Burr*, who were then engaged in the business of rendering lard from hogs' heads by steam, and barreling the lard so rendered for hire, at the town of *Wabash*, three thousand hogs' heads, which they agreed to render into lard, and barrel the same for the plaintiff, within a reasonable time, &c., for which service he agreed to pay them a reasonable compensation, &c. It is averred that the defendants have failed to perform the agreement on their part, &c.

Pleas, 1. The general issue. 2. Performance. 3. That the plaintiff was indebted to the defendants 200 dollars, for rendering lard and barreling the same, &c., which sum exceeds in amount their indebtedness to him, &c.

Issues being made on these pleas, the cause was tried by the Court, who found for the plaintiff. New trial refused, and judgment.

The Court, upon the defendants' motion, gave a written statement of the facts on which its finding was based, and of the conclusions of law arising on the facts. That statement is as follows:

1. The plaintiff delivered to the defendants, as bailees, two thousand one hundred hogs' heads, out of which lard was to be rendered by them for him, which heads each produced four pounds of lard, making eight thousand four hundred pounds.

2. The defendants delivered to the plaintiff, at *Jackson's* warehouse, in the town of *Wabash*, in twenty-three barrels, five thousand one hundred and sixty-two pounds of lard,

leaving unaccounted for and undelivered, three thousand two hundred and thirty-eight pounds. The lard was worth 5 cents per pound, making for the last-named quantity, in money, 161 dollars and 90 cents. As a compensation for rendering said lard, the defendants were entitled to 84 dollars, leaving a balance due the plaintiff of 77 dollars and 90 cents.

3. The plaintiff, after the delivery of the twenty-three barrels, and before the commencement of this suit, notified the defendants to deliver to him all the lard made from said heads; but they declined to deliver any more lard. He did not, at any time before this suit, either pay or tender to them any sum for their services, nor was any demand made by them for such services. When the twenty-three barrels were delivered, the lard was subject to their claim for rendering the same, amounting to 51 dollars and 63 cents, which amount was never paid to them. The delivery at *Jackson's* warehouse was with his consent.

These were all the facts proved in the cause; and upon them the Court, as a conclusion of law, decided that no payment or tender for services in rendering the lard, was necessary before suit.

Was this decision correct? Generally speaking, if a chattel delivered to a party receive from his labor and skill an increased value, he has a specific lien upon it for his remuneration, provided there is nothing in the contract inconsistent with the existence of the lien. And such lien exists equally whether there be an agreement to pay a stipulated price for "the labor and skill," or an implied contract to pay a reasonable price. The present is one of the cases in which liens usually exist in favor of the party who has bestowed services on property delivered to him for the purpose. And unless the record discloses facts or circumstances sufficient to produce the inference that the defendants waived their lien before the institution of this suit, they were not compelled to give up the property, when the plaintiff demanded it, without the payment or tender of a reasonable compensation for rendering and barreling the lard. If the defendants, at the time of the de-

Nov. Term, 1855.

HANNA
v.
PHELPS.

mand, had refused, on the ground of their lien, to part with the property, the law of this case would be clearly in their favor; but here the plaintiff's demand was answered by an absolute refusal to deliver any more lard. We are therefore to inquire whether that refusal waived the lien.

Upon this subject the authorities are not uniform. In *England,* the rule seems to be, that a person having a lien upon goods, does not waive it by the mere fact of his omitting to state that he claims them in that right, when they are demanded. But if a different ground of retention than that of the lien be assumed, the lien ceases to exist. *White* v. *Gainer,* 9 Moore 41.—2 Bing. 23.—1 Carr. and P. 324.—1 Camp. 410. It is, however, contended that the refusal of the defendants, to have shielded them, should have been qualified by their claim of a lien. There is authority in support of that position. *Dow* v. *Morewood,* 10 Barb. 183, was replevin for twenty-one cans of oil. In that case, it was held "that the defendant, having, upon demand made, refused to deliver the oil to the plaintiff, without setting up any lien thereon, waived his right to set up a lien afterwards for freight, &c.; that he could not be allowed to deny the plaintiff's title, before suit brought, and afterwards defeat a recovery by setting up a lien."

We are inclined to adopt this rule of decision. An unqualified refusal, upon a demand duly made, is evidence of a conversion; because it involves a denial of any title whatever in the person who makes the demand. In the case before us, the defendants "declined to deliver any more lard." This was, in effect, an assumption that they had in their possession no more belonging to the plaintiff. At least he had a right to infer from their answer to his demand, that they would deliver to him no more lard, unless compelled to do so by action at law. And having thus assumed a position relative to the property inconsistent with his title, he had, further, the right to infer that a tender to the defendants for their services would be unavailing. We are of opinion that the facts proved are sufficient to sustain the judgment.

There is a point made as to the jurisdiction of the Court.

This case was tried by the honorable *Thomas S. Stanfield*, judge of another circuit, at a special term held in *June*, 1853; and it is contended that all the steps required by law to authorize such special term, have not been taken. 2 R. S., p. 5, s. 3. We have heretofore decided that the above special term was held in conformity with the statute just cited. *Murphy* v. *Barlow*, 5 Ind. R. 230.

<div align="right">Nov. Term, 1855.
_____

The judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

*H. P. Biddle*, for the appellants.

*D. D. Pratt* and *D. M. Cox*, for the appellee.

