## THE B. F. WOOLSEY.

*(District Court, S. D. New York. May 5, 1881.)*

1. SHIPWRIGHT'S COMMON-LAW LIEN — POSSESSION — PROCEEDINGS IN STATE COURT TO FORECLOSE—FORFEITURE OR WAIVER OF LIEN— ESTOPPEL—CONVERSION—SEIZURE BY SHERIFF—SEIZURE BY MARSHAL—ADMIRALTY JURISDICTION TO ENFORCE COMMON-LAW LIEN— STATE STATUTE ENLARGING LIENOR'S RIGHTS—FINDING OF STATE COURT AS TO AMOUNT DUE, HOW FAR BINDING.

The common-law lien of a shipwright, who takes a vessel into his possession for repairs, and continues to hold it, is too well established as matter of authority to be open to dispute. *The Marion,* 1 Story, 68.

Where the libellant's ship-yard was partly on the libellant's premises and partly on those of the town of P., constituting a public dock, but used by him under an agreement with the town, and the master of the vessel surrendered her there into the actual custody of the libellant, who was understood by both parties to be responsible for her care and safety, although the master, who was also the owner, stayed by the vessel most of the time, and retained the cook and mate, who slept on board—the presence of the master, and the retention of the cook and mate, not being with the intent to retain the custody of the vessel, but to help in repairing and to lessen expenses—

*Held,* that the libellant had such actual possession of the vessel as would give him a common-law lien. The nature of the possession requisite, or the acts and circumstances indicating it, varies with the nature of the object on which the work is done.

*Also held,* that the act of the libellant, a shipwright, having a common-law lien on a vessel for repairs, in instituting a suit in the state court to foreclose his lien, advertising the interest of the claimant and that of a mortgagee in the vessel for sale at auction under a judgment in the suit, and buying it in at the sale and taking a bill of sale from the receiver, where the receiver never took actual possession, but the uninterrupted possession remained in the libellant, did not operate to extinguish the libellant's lien; the state court and the United States courts (3 FED. REP. 457; 4 FED. REP., 552) having declared the whole proceeding null and void, for want of jurisdiction, as affecting the title of the vessel. There was, in fact, no sale, but merely an attempt to sell. What was done created no new title, and vested no new possession in the libellant or in any other person.

Although the libellant, believing he had thus acquired a new title, subsequently sought to bond the vessel in this court as owner, he is not estopped by such averment as owner, in his pleading in this court or in the state court, to deny now that he ever had such title, because the fact has since been conclusively found against him in a litigation relating thereto between himself and this claimant. Nor did that void sale, or attempt to sell the claimant's interest in the

vessel by the libellant, constitute such a tortious dealing with the property that he has thereby forfeited or waived his lien. There is no evidence or averment in the answer of any dealing *with the vessel herself* in connection with that sale.

*Also held*, that the lien was not extinguished by the sheriff seizing the vessel in a replevin suit brought by the claimant against the libellant.

*Also held*, that the libellant's rights as a lienor were not affected by the subsequent seizure of the vessel by the United States marshal, in a suit for seamen's wages, nor in a suit for wharfage.

*Also held*, that the libellant's act in procuring the marshal to seize the vessel in this suit to enforce the lien, cannot operate to extinguish the lien, provided this court has jurisdiction.

*Also held*, that this court has jurisdiction to enforce a simple common-law possessory lien, independent of the question whether the lienor's rights were enlarged or altered by the New York statute giving lienors the right to enforce their liens by a sale of the property. The power of a court of admiralty to order the sale of a vessel does not depend upon the right the libellant may have to sell her, or cause her to be sold, to enforce his demand; but it is a power inherent in the court, to be exercised in the interest of commerce. The cause being maritime in its nature, the court has jurisdiction of the parties and the subject-matter. It is immaterial that the vessel is a domestic vessel.

*Held further*, that the New York statute was intended to and did confer on this class of lienors the new and enlarged right to enforce their liens by a sale of the property, notwithstanding, in the particular case of a maritime contract, the proposed remedy fails because the state could not confer on any of its courts jurisdiction to make the sale.

That such failure of remedy does not prevent the statute from having its effect in thus modifying and enlarging the nature of the lien; and a court of admiralty, in enforcing the lien, will give it full effect, according to the intention of the statute, as a lien, carrying with it a right of enforcement by sale of the chattel. The statute is applicable to simple common-law possessory liens, such as that of the shipwright, and is not confined to cases of liens where by the existing law the lienor had already the right to enforce his lien by sale.

*Also held*, that the finding of the state court as to the amount due is not conclusive on the claimant as a judgment. The state statute did not provide for a separate money judgment for the amount due, in addition to the judgment for foreclosure, nor was such judgment in fact recovered in the case. The finding is incidental merely to the chief purpose of the action, which is the foreclosure of the lien.

In Admiralty.

*Henry D. Hotchkiss*, for libellant.

*H. B. Kinghorn*, for claimant.

CHOATE, D. J. This is a libel brought by a shipwright to recover, against the schooner B. F. Woolsey, a domestic vessel, his charges for repairing. The libel alleges that one Terrell, the master and owner of the vessel, delivered her into the possession of the libellant to be repaired; that repairs were made of the reasonable value of $869.46; that she has at all times remained in his actual possession; and that he has a "common-law lien" upon the vessel for the amount due him; and the libel prays that the vessel be condemned and sold to satisfy the libellant's claim. Terrell, the owner, alone appeared to contest the suit. He has set up several defences, by exception and answer, which will be severally considered:

1. In the first place, it is objected that the common-law lien or right to hold the thing on which work has been done in possession till payment of the charges incurred does not extend to ships; that it is a right appertaining to particular trades, but existing only where the usage of the particular trade has established it; that it can be proved to exist only by proof of such usage in the particular trade. Doubtless this right originated in usage or custom, at first being established by evidence of the existence of the usage in particular trades, and afterwards being taken notice of as established customary law; and it seems to have been first recognized as existing in favor of persons exercising a *quasi* public employment as inn-keepers, and the like, who were obliged to render the service; but it has been extended to all artisans bestowing labor on goods, whether they would have been compelled to accept the employment or not. Thus it is said by Chancellor Kent, (2 Com. 635, 12th Ed.:)

"It is now the general rule that every bailee for hire, who, by his labor and skill, has imparted an additional value to the goods, has a lien upon the property for his reasonable charges."

And in the particular case of the shipwright who takes into his possession the vessel for repairs, and continues to hold it in his possession, the lien is too well established as matter of authority to be open to dispute. In the case of *The Marion*, 1 Story, 68, Mr. Justice Story and Judge Davis

affirm it as an undoubted principle of the common law. In many other cases, also, the right has been recognized. In a suit in the supreme court of New York, between these same parties, it was held to be the rule of the common law as it exists in this state. On such a question the opinion of that court is entitled to great weight, and this point must be held not well taken.

2. It is also objected that the libellant never had such an actual and exclusive possession of the vessel as is necessary to give him this common-law lien. On this point the evidence is that the libellant occupies certain premises adjoining a wharf at City Island, in this port, as a ship-yard for the repair of vessels. The premises are partly his own and partly belong to the town of Pelham, constituting a public or town dock. By an arrangement between him and the town authorities he uses this part of the town property for his own purposes. On his own part of the premises is a railway on which he hauls vessels out of the water. This vessel was brought to the place by Terrell, the master and owner. She came to anchor, and afterwards was hauled to the premises ordinarily used by libellant as a ship-yard, being moored at first on that part belonging to the town. She was afterwards hauled out on the railway, and again taken off the railway and moored in her former position. I am satisfied by the evidence that the owner surrendered the actual care, control, and custody of the vessel to the libellant. The crew were dismissed, except the cook and the mate, whom the owner wished to retain for future service. The owner and the cook and mate helped the libellant in his work. The cook and the mate slept on board the vessel all the time the repairs were going on, except a short time when the condition of the vessel made it impracticable, and then they slept in a building of libellant on the adjoining wharf. The owner stayed by the vessel and slept on board most of the time, but on Saturdays he went to his home in Brooklyn, returning on Monday morning. The libellant took his directions from the owner as to what repairs were to be made. It is clear from the testimony that the parties understood that the libellant was responsible for

the care and safety of the vessel. His men moored her, hauled her on and off the railway, tended her lines, and looked after her safety in bad weather. If the master and owner had remained, or kept the cook and mate there, for the purpose of retaining the possession or custody of the vessel, then the possession of the libellant would not probably have been such as to give him a lien. But it is clear they were not there for any such purpose, nor did they assume in any way to retain the actual custody of the vessel. Their acts upon and about the vessel were *alio intuitu*— to help on and hasten the repairs, and lessen the expense. The circumstances of the case are very much like those of *The Marion, ut supra,* where similar possession by a shipwright was held to be sufficient to give a common-law lien. The nature of the possession must be according to the nature of the object on which the work is done. A ship is an unwieldly subject, and the possession of it cannot be exactly like that which a mechanic obtains of a horse or a watch; or, rather, the fact of possession is evidenced by different circumstances and acts. In this case the evidence is satisfactory that the libellant had actual possession.

3. It is next objected that the libellant agreed to do the work on a credit of six or eight months without security. If this were so, of course there would be no lien. The agreement would be inconsistent with an intention to retain the vessel till libellant's bill was paid. On this point the evidence of what conversation took place between the parties is conflicting. The claimant swears to a conversation importing some such agreement. The libellant positively denies it. If forced to determine this point on the relative credibility of the parties, I should find the alleged agreement not proved. There are, however, certain circumstances proved which are entitled to greater weight than testimony of conversations. The conduct of the claimant when the work was done, and payment of the bill demanded, shows clearly, I think, that he did not then understand that he was entitled to take the vessel away without payment of the libellant's bill. There being no other obstacle except the non-payment

of the bill to his taking her away, he went away to try to raise the money to meet the bill, but was unable to do so. An unsuccessful attempt, also, was made to arrange security. These circumstances, and the greater probability on all the testimony of the libellant's version of the affair, are sufficient to determine this point in libellant's favor.

4. It is also claimed in the answer that the libellant has lost his lien by causing the vessel to be sold at public auction under the judgment in said proceeding in the state court in satisfaction of his pretended lien. That proceeding in the state court has recently been the subject of litigation in this court and in the circuit court, and it has been held that it was void so far as it assumed to affect the title of the vessel for want of jurisdiction in the state court. *The B. F. Woolsey,* 3 FED. REP. 457; 4 FED. REP. 552. While, however, the proceeding as a legal proceeding was void for want of jurisdiction, yet it was promoted by an act of the libellant, and the question is whether the sale made under that proceeding has operated to extinguish the lien. The libellant instituted that suit, caused a receiver to be appointed therein, had the interest in the vessel of Terrell, the owner, and Whitehead, a mortgagee, the defendants in the suit, sold at auction under the judgment, and bought it in at that sale, and took a bill of sale from the receiver. The receiver never, in fact, took possession. The actual possession remained with the libellant as before. There was no delivery to him by the receiver except the delivery of the bill of sale. It is to be assumed, of course, now, that no title vested in the receiver, and no title passed by the sale or by the bill of sale. The whole proceeding was a nullity, and inoperative as effecting the title. It has been so declared to have been null and void by the state court in which the suit was brought on motion of this libellant, though against the opposition of this claimant. There was no sale, in fact, of anything, but a mere attempt to sell, which was futile and inoperative. There was the appearance of a sale merely. What was done created no new title, nor vested any new possession in the libellant or in any other person.

v.7,no.1—8

The libellant, though upon the basis of his supposed new title he averred himself to be the owner, and as such sought to be admitted to claim and bond the vessel in this court, is not estopped by such averment in his pleading in this court, or in the state court, now to deny that he ever had any such title, because the fact has been conclusively found against him on this point upon a litigation relating thereto between himself and this claimant. Does this void sale, or attempt at a sale, of claimant's interest by the libellant, however, constitute such a tortious dealing with the property on which he had a lien that he has thereby forfeited or waived his lien? This is the only question in respect to his acts, as operating to extinguish his lien, raised by the answer. A lienor who converts the property on which he has a lien—as, for instance, by selling and delivering it to another person—undoubtedly forfeits his lien. His possession is gone, and he has asserted a right over the property inconsistent with his lien. The lienor is not allowed to claim a lien and to deal with the property as his own. This would be inconsistent with good faith. But, admitting this principle, no case is cited which goes so far as to compel me to hold that this void sale in and of itself worked a forfeiture or waiver of the lien, which is a lien very much favored by the law. The libellant thought he had a right to foreclose the lien under the state law. He believed he had acquired a title under that law. In this he was mistaken. And this supposed right he asserted in this court. That act is not, however, made the basis of the claim that the lien is extinguished. But there is no evidence of any dealing *with the vessel herself* in connection with this auction sale, nor is any such thing alleged in the answer. What was done in making this sale was done not to or with the vessel herself: it was a sale in form, but unaccompanied by any actual dealing with the vessel. It is not even shown that the libellant resisted the claimant's demand for the vessel, on the ground that she had become his own property under this sale, which might have worked a forfeiture or waiver of his lien. If his actual possession had been interrupted, and the receiver had taken

possession, and he had then taken her from the receiver under a new title, the case would be different. See *Jacobs v. Latour*, 5 Bing. 130. So, too, if title had passed by the sale the lien would be gone. *Mexal v. Dearborn*, 12 Gray, 336. What the libellant did in thus attempting to sell the owner's interest was not with any purpose of relinquishing the lien, but with the purpose of insisting upon and enforcing it, and I think it has not operated to extinguish the lien. There was certainly no intended bad faith towards the owner, nor did the attempt to sell impair or injuriously affect the owner's interest. I am not called on to determine whether any of libellant's other acts in or in pursuance of the suit in the state court operated to extinguish the lien. See, further, as to waiver or forfeiture of lien, *Kerford v. Mondel*, 28 L. J. (N. S.) Exch. 303; *Weeks v. Goode*, 6 C. B. (N. S.) 367; *Winter v. Coit*, 7 N. Y. 288; *Doros v. Morewood*, 10 Barb. 183; *Hanna v. Phelps*, 7 Ind. 21; *Thompson v. Traill*, 6 B. & C. 36; *Boardman v. Gill*, 1 Camp. 410; *Scharf v. Morgan*, 4 M. & W. 270.

5. It is further claimed that the lien was extinguished by the seizure of the vessel by the sheriff, in a suit of replevin brought by this claimant against this libellant, or by her seizure by the marshal under the process of this court. It appears that in January, 1880, this claimant brought a suit of replevin against this libellant to recover the vessel, and the usual requisition to take possession of her was given to the sheriff; that the sheriff, without removing her, or otherwise disturbing the possession of this libellant, put a keeper on board, and maintained a sufficient possession to satisfy the requirements of the replevin suit till some time in March, 1880, when a suit for wages by one Terrill, the mate, was commenced in this court. This suit for wages was instigated by this claimant, and, with his consent, the sheriff abandoned whatever possession he had, to enable the marshal to seize her under his process. Afterwards, a suit for wharfage was commenced in this court by the town of Pelham, and now this present suit to enforce libellant's lien. The marshal holds the vessel under the several processes in these three actions. As to

the suit in replevin, it cannot for a moment be admitted that the owner of a chattel can extinguish a lien thereon by any act of his own other than payment or tender of the sum due, whether by legal proceedings or otherwise; and the seizure by the marshal in the first two suits being *in invitum*, as against the libellant, cannot affect his rights. As to his own suit, if the court has jurisdiction to enforce the lien against the vessel—a point hereinafter discussed—it can enforce it only by first acquiring jurisdiction over the *res* by seizing it under its process; and it would be quite absurd to suppose that its seizure by the marshal for this purpose would operate to extinguish the rights of the libellant. See *The Acacia*, 42 L. T. (N. S.) 264, 267. In the case of *The Marion, ut supra*, there was such a seizure by the marshal, but it was not suggested that it did or could affect the libellant's rights.

6. Finally, it is objected that the court has no jurisdiction to enforce such a common-law possessory lien; that the lien is a bare right to hold till payment is made; that it is unaccompanied by any right to have the chattel sold. It is argued that the nature of the right is such that no court will or can give effect to it by a sale of the property.

Assuming that the right of the libellant was nothing more than the simple common-law possessory lien, and that it is not enlarged or altered in its character by the statute of New York giving lienors a right to have the lien foreclosed by a sale of the chattel, the objection is not well taken. The power of a court of admiralty to order the sale of a vessel does not depend upon the right which the libellant may have to sell her, or cause her to be sold, to enforce his demand. It is a power inherent in the court—an essential part of its jurisdiction—to be exercised in the interest of commerce to extricate the vessel and the parties from the impediments that stand in the way of her legitimate use as an instrument of commerce. See *The Anna H. Smith*, D. C. S. D. N. Y., Oct. 14, 1878. The precedent of *The Marion, ut supra*, is sufficient authority for the exercise of the jurisdiction in this case, even if the lien is a mere common-law lien or right to

hold possession till the shipwright's charges are paid. The court has jurisdiction of the parties and the subject-matter because the cause is maritime. The fact that the vessel is a domestic vessel is immaterial. It will not tolerate a perpetual holding of a vessel to enforce payment. Such perpetual holding is contrary to its maxim that ships were made to plow the sea, not to rot by the wall. Therefore it will exercise its power to sell, and thus do substantial justice between the parties.

It is not, however, true, as it seems to me, that the libellant's lien is a mere common-law possessory lien, without any right to have the vessel sold to satisfy the lien. The state statute, as to all after-made contracts under which a lien would arise at common law, has enlarged the rights of the lienor and given him a lien not merely to hold, but a lien with the right to have it enforced by a sale of the chattel. Although in the particular case of a maritime contract the proposed remedy fails because the state could not confer on any of its courts jurisdiction to make the sale, yet none the less is the purpose of the statute evident to confer upon the lienor this new and enlarged right. This court has no difficulty in enforcing the right of having the vessel sold to satisfy the lien, and it will give full effect to all the rights intended to be granted to the lienor according to its own method of procedure. If this is the correct view of the statute, then, of course, there is nothing in this objection. A question is suggested in the opinion of the learned circuit judge, (4 FED. REP. 558,) whether this statute of New York is not confined to cases of liens where, by the existing law, the lienor had already the right to enforce his lien by sale; the statute being intended to provide a convenient and safe remedy and mode of procedure in such cases. I think, however, that the terms and evident purpose of the statute indicate that it is applicable to simple common-law possessory liens, such as that of the shipwright, and that it was intended to give new rights to such lienors, and to provide a remedy for their enforcement. The statute enumerates among the persons within its operation "any innkeeper, boarding-house

keeper, *mechanic, workman,* or bailee who shall have a lien upon any chattel property." These classes of persons have, as is well understood, this common-law possessory lien, and *mechanics* and *workmen* certainly have ordinarily, and in the absence of a special contract, and independently of this statute, only this mode of securing themselves. They have not by law a lien with any right or power to sell. The statute is remedial, and should have a liberal construction to effect its apparent purpose. This particular class of lienors certainly stood in more obvious need of legislative aid than any other, to enlarge and make more effectual their right, which, as it existed at common law, has been often found a barren and ineffectual method of securing their just dues. Therefore, this class of lienors being fairly within the language of the act, and their relief by such legislation being more obviously called for by considerations of public policy than that of any class of lienors who already had a right to enforce their security by a sale, I think the statute was intended to include them. Such has been the view taken also by the state court.

The claimant's objections to the libellant's recovery not being well taken, there must be a decree for the libellant.

7. The libellant insists that the judgment in the proceeding in the state court, though void as a proceeding for foreclosure, is yet a conclusive determination of the fact of the existence of the lien and the amount of the debt due to him; that to this extent the remedy given by the statute is a common-law remedy, which the state court had jurisdiction to administer; and therefore, to this extent, the judgment is valid and binding on the parties. If the statute provided for a separate money judgment for the amount of the debt, in addition to the judgment for foreclosure, this argument would seem to be well founded. But it does not do so, nor was such judgment in fact recovered in the case. It appears to me that the ascertainment of the amount due is incidental, merely, to the chief purpose of the action, which is the foreclosure of the lien; and the court not having jurisdiction to make a decree of foreclosure, the judgment is not binding as to such incidental finding of the amount due. It is true

that a statute might be passed authorizing a court to ascertain and decree the amount due a lienor, without giving any further remedy by judgment for the payment of the amount, or any common-law process for the enforcement of such payment. Such a statute might have its uses; as, for instance, to enable the owner to tender the proper sum, or the lienor to demand exactly what was due, in case of doubt as to the amount justly due. Such a statute would, however, be a novelty, and it may well be doubted whether such a remedy, if it could be called a remedy, could be considered a common-law remedy, such as is alone reserved for the action of the state courts in cases of maritime contracts. It would seem not to be so. The common-law remedies reserved seem to be the recovery of a money judgment, with the incidental remedies of attachment and arrest on mesne process, and the various forms of execution known at common law. For these reasons it must be held that the finding of the state court, as to the amount due, is not conclusive on the claimant as a judgment.

Decree for the libellant, with costs, and a reference to compute damages.