## THE ULRICA.

(District Court, D. New Jersey. June 5, 1915.)

MARITIME LIENS ⬤⧼37—REPAIRS—COMMON-LAW POSSESSORY LIEN.

A repairer in possession of a vessel has a common-law possessory lien for repairs made while so in possession, which continues notwithstanding the seizure of the vessel in proceedings by other lien claimants, and, if its claim is also maritime, its lien is entitled to priority over older liens of the same class.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 58–70; Dec. Dig. ⬤⧼37.]

In Admiralty. Suit by the Weehawken Dry Dock Company against the steamboat Ulrica. On determination of priority of liens.

Alexander & Ash, of New York City, for Weehawken Dry Dock Co.
Foley & Martin, of New York City, for Tietjen & Lang Dry Dock Co.
Roe, Runyon & Autenrieth, of Jersey City, N. J., for Archibald McNeil Sons Co.

RELLSTAB, District Judge. The steamboat Ulrica was libeled, while in the possession of the Weehawken Dry Dock Company, by Burton Smith and others, wage claimants. It was seized and sold by the United States marshal. The proceeds of sale, after payment of the amounts due such wage claimants and the taxed costs, are insufficient to pay the claims of the other libelants. The claim of the Weehawken Company embraces repairs made during different periods when such steamboat was in its possession. For the amount due for the repairs made during the period when the boat was last in its possession it claims priority in payment, on the ground that it had a common-law possessory lien for such repairs.

The Weehawken Company had a common-law lien for the repairs last made, and this lien continued notwithstanding the seizure of the steamboat by the United States marshal. The B. F. Woolsey (D. C.) 7 Fed. 108; The Two Marys (D. C.) 10 Fed. 919. See, also, American Trust Co. v. W. & A. Fletcher Co., 173 Fed. 471, 97 C. C. A. 477. This is not disputed by the other libelants; but they contend, first, that as their liens, being of the same class or rank of privilege as that of the Weehawken Company, all accrued before these repairs were

made by the Weehawken Company, they are superior to such possessory lien; and, second, that the possessory lien was waived.

As to the first contention: If the repairs made by the Weehawken Company were not maritime in their nature, its common-law lien would have to yield to the liens of the other libelants. The Guiding Star (C. C.) 18 Fed. 263; The Unadilla (D. C.) 73 Fed. 350. See, also, The Tergeste, 9 Asp. M. C. 356 [1903] L. R. 26. But the character of these repairs is maritime, and, treating the Weehawken Company's lien as maritime, unaffected by the fact that it had also a common-law lien for such repairs, it is manifest that such lien is at least equal in rank to the liens of the other libelants. That being the status of such lien, it is inconceivable that it should become subordinate to the other liens on the ground that the latter accrued before those repairs were made. Such a subordination, while it would be consistent with the doctrine which controls the priority among common-law liens, would be subversive of the very genius of the maritime law which in the matter of privilege among claims of the same class, in the absence of special equities, prefers those that have most immediately preserved the res subjected to the lien. The J. E. Rumbell, 148 U. S. 1, 9, 13 Sup. Ct. 498, 37 L. Ed. 345; The John G. Stevens, 170 U. S. 113, 119, 120, 18 Sup. Ct. 544, 42 L. Ed. 969; The Guiding Star (C. C.) 18 Fed. 263, 268. See, also, The Glen Island (D. C.) 194 Fed. 744, 746. There are no equities in this case that would justify the exclusion of the Weehawken Company's lien from the benefit of this primary rule. On the contrary, its possessory lien, arising from its custody of the steamboat at the time of seizure, but emphasizes the need of enforcing in this case the rule which gives priority in the inverse order to that in which the liens of the same class accrued.

As to the second contention: It is sufficient to say that the evidence does not support it. While the evidence tends to show that the Weehawken Company did not realize all the advantage that the possession of the steamboat gave it, yet there is nothing to indicate that it intended to surrender any rights that it may have had by reason thereof.

The Weehawken Company is entitled to priority in payment as to the sum of $138.02, the value of the repairs made by it during the period brought to a close by the seizure of such steamboat.