WOLCOTT *vs.* SULLIVAN and others.

Although a mortgagee is tenant to the mortgagor of the premises mortgaged, yet the right to set off rents against the principal or interest of the mortgage debt, does not necessarily attach as an inherent quality of the contract, so as to prevent the assignment of the mortgage, except subject to the right, on a bill to redeem.

But, while a mortgagee holds the mortgage, and is also tenant, so long the mortgagor has a right to have the rents applied to the keeping down of the interest.

If a mortgagee, in possession, is allowed to retain it after assigning his mortgage with notice, the mortgagor cannot charge the subsequently accruing rents against the assignee. His remedy is by eviction or compelling an occupation rent.

Neither at law nor in equity can there be set off against a distress for rent.

Where a mortgagee has assigned his whole interest, and the mortgagor files a bill for an account and to redeem, the general rule is, that the mortgagee is not a necessary party. Still, if there are circumstances rendering it proper, the practice is otherwise.

THIS was a bill to redeem. Oliver Wolcott, the complainant, owned a house and lot known as No. 30, Pine-street, in the city of New York. He was desirous of obtaining the sum of five thousand dollars, by way of loan, upon it.

Mr. Sullivan, one of the defendants, was in the occupancy of part of the premises as a tenant; and he proposed to accommodate the complainant with the loan on mortgage, and to become a lessee for a term of years, at a rent of one thousand dollars per annum. A bond and mortgage were accordingly made out and executed by the complainant to the defendant, Sullivan, in the usual form, bearing date the twenty-fifth day of January, one thousand eight hundred and twenty-eight, and securing the repayment of five thousand dollars on the first day of May, one thousand eight hundred and thirty-one, with interest half-yearly.

*October 3, 1832.*

*Set off as between landlord mortgagor and tenant mortgagee; and between the former and the assignee of the mortgage. Parties.*

At the time of giving the bond and mortgage, the complainant received from the hands of Mr. Sullivan the five thousand dollars. Simultaneously, a lease was also executed between these parties, by which the former demised to the latter the same premises, for the term of three years, from the first day of May, one thousand eight hundred and twenty-eight, at an annual rent of one thousand dollars, payable half-yearly. The lease contained usual covenants, and a power to re-enter or distrain, in case default were made in payment of the rent.

Notwithstanding the bond and mortgage were taken in the name of Mr. Sullivan, and although he represented, at the time of the transaction, that the loan was made on his own account, and the complainant, as well as his agent in the negociation so understood it, and were not informed of the contrary until long afterwards; yet, the money, in fact, belonged to Commodore Hull, the other defendant in this suit. The latter resided in Philadelphia, and he had entrusted Mr. Sullivan with it, in the usual course of business, for the purpose of investing it on bond and mortgage—confiding the matter entirely to him in his professional capacity and as his agent.

Although the bond and mortgage had been taken in the name of Mr. Sullivan, and was duly recorded, he immediately thereafter, by assignment dated the twenty-sixth day of January, one thousand eight hundred and twenty-eight, transferred them to Commodore Hull. This assignment was not put upon record until the twenty-ninth day of July, one thousand eight hundred and twenty-nine; and actual notice was not given of it, nor does it appear that the complainant was made acquainted with the fact of the money's belonging to Commodore Hull, until the eleventh day of March, one thousand eight hundred and thirty, when the latter gentleman wrote a letter to the complainant, informing him of the facts, and forbidding the payment of any interest, or the principal, except to himself or under his order.

In the mean time, Mr. Sullivan remained in possession of the mortgaged premises, under the lease, and making payments from time to time on account of rent, a part of which was applied to the interest, as it became due, on the bond and

mortgage. These payments, thus made by Mr. Sullivan, satisfied the rent to about the first day of May, one thousand eight hundred and thirty; and, through the same medium, Commodore Hull received his interest money up to the same period of time.

1832.

WOLCOTT
v.
SULLIVAN.

The lease expired on the first day of May, one thousand eight hundred and thirty-one; at which time there was one year's rent in arrear. On this account, the complainant refused to pay the mortgage debt or interest, except an allowance for the rent still due to him was made.

On the eighteenth day of May, one thousand eight hundred and thirty-one, previous to the filing of the bill, the complainant proposed to pay off the bond and mortgage, first deducting the rent in arrear; and made a tender of the balance to Commodore Hull.

Mr. *D. D. Field* and Mr. *R. Sedgwick*, for the complainant.

Mr. *George Griffin*, for the defendant, Hull.

Mr. *H. W. Warner*, for the defendant, Sullivan.

THE VICE-CHANCELLOR. The main question which arises in this case is between the complainant and Commodore Hull, the assignee and holder of the mortgage : as to the terms upon which the former shall be permitted to redeem? Although there are questions arising, rather incidentally than otherwise, in which Mr. Sullivan is concerned.

January 9,
1833.

The grounds upon which the complainant contends he has a right to set off the balance of rent due to him, against the principal and interest of the mortgage, are these : the agreement for the loan and for the lease being one and the same transaction, in which he knew Mr. Sullivan not as an agent for the lender, but as the lender himself; one part of the transaction being an inducement for the other ; and that, from the reciprocal liabilities thereby created, to pay the rent and principal and interest of the bond and mortgage, an equity arose between the complainant and Sullivan, which the assignee

K K

assignment of the bond and mortgage could not defeat, so that Commodore Hull took the assignment subject to such equity.

It is not denied, that any rent which may have been due at the time the latter gave notice of the assignment, would be a subject of set off. So far, there was an equity in the complainant not to be impaired. But, no rent appears to have been in arrear, except what has accrued since notice of the assignment; and, yet, the complainant insists upon the existence of a like equity in respect to the subsequent rents.

The general principle is not controverted, that an assignee of a mortgage is bound by the equities existing between the mortgagor and the original mortgagee at the time of the assignment, or which may arise before notice to the mortgagor. In *Norrish* v. *Marshall*, 5 *Mad. R.* 481, the Vice-Chancellor states it thus: as against an assignee without notice, the mortgagor has the same rights as he has against the mortgagee, and whatever he can claim, in the way of set off or mutual credit, as against the mortgagee, he can claim equally against the assignee. This is doubtless correct, and it brings us to the enquiry at once: what is the equity which the complainant had against his mortgagee when he received notice of the assignment?

Is it an equity which gave him a right of set off for any thing more than the amount of rent which then appeared to be due? or, is it an equity which afforded him a security for the rent during the whole term of the lease, notwithstanding the mortgage might be assigned?

There is nothing contained in the lease or bond or mortgage expressly recognizing or conferring such right; and I apprehend, if it can be made out or supported at all, it must be either because the principle of set off in courts of equity requires it, or because it results by necessary implication from the nature and unity of the transaction, or from an express agreement between the parties. In *Green* v. *Darling*, 3 *Mason*, 202, Judge *Story* has examined the whole doctrine of set off arising either from statute law or as understood and acted upon by courts of equity independent of statute. He shows that courts of equity, following the doctrine of compensation of the civil law to a

certain extent, will set off distinct debts where there has been a mutual credit; while the mere existence of distinct debts is not sufficient to give the right, unless there is some mutual credit in relation to such debts arising from the course of dealing between the parties. Hence, he observed, the right of set off does not attach to the debt itself, nor depend upon the mutuality of the debts in their origin as an inherent quality belonging to such debts, but upon the situation and rights of the parties between whom it is sought to be enforced. It is a privilege or right attaching to the remedy only; and which, by the laws of some of the states, may be allowed, while in others, it is denied. But it touches not any obligation of contract or vested right. The right of set off is not an equity which the original debtor may, at all events, assert against the assignor or assignee of the debt, whether he has or has not notice of its existence. The court of chancery has as yet laid down no such general rule as that an equity exists to have debts set off against each other, which attaches to the debts themselves and travels with them into whose soever hands they may come; though it is doubtless true, that where there are mutual subsisting debts and either an express or implied agreement of stoppage *pro tanto* or mutual credit, a court of equity will enforce it against the party himself and against his assignee with notice.

And it may be added, as is shown by the case of *Lindsay* v. *Jackson*, 2 *Paige*, 581, that there may be equities springing from other sources, such as the insolvency of a party, which would authorize this court to interfere, independently of statutory regulations.

I have adverted to these principles, which I deem to be sound in the abstract, merely for the purpose of showing, that when these parties entered into the contract for the loan on mortgage and on account of the lease of the premises and executed the instruments creating their respective obligations and liabilities towards each other, the right of set off did not necessarily attach or become incorporated in the contract as an inherent quality of it, so as to prevent either of them from assigning, except it were done subject to such right.

Under our system of jurisprudence, even as administered by the court of chancery, the right of set off is not based upon this ground; nor do I understand the doctrine of compensation of the Roman law to be founded upon such a principle : for it is only where reciprocal debts are actually due and payable, that the one necessarily compensates by way of payment and extinguishment of the other. · It is only where the debts are due that one can be considered as naturally discharging the other by mere operation of law and without any act of the parties ; and it is expressly declared, that debts of which the time of payment has not arrived are not compensated with those which are due : *Domat, Book* 4, *tit.* 2. The right of compensation, therefore, which is regarded as a natural right, does not arise from the making of a contract or the creation of an indebtedness, but, like the principle of set off, from the time when mutual debts become payable.

I am satisfied there is nothing in the idea of an inherent right of set off or compensation; and I must look to the extrinsic circumstances of this case to see whether it exists as is contended for : by express agreement or necessary implication from the particular facts which may have been proved.

Notwithstanding the testimony shows the lease and mortgage were parts of the same transaction, executed at the same time, and growing out of a proposition originally made by Mr. Sullivan, to lend the money on mortgage and take a lease, yet, I do not perceive any thing like an agreement to connect them inseparably, or that the rent was to be secured at all times, by taking it out of the principal or interest of the money loaned. The witnesses do not prove an agreement or understanding to this effect. Colonel Gibbs, (on whose testimony implicit reliance is to be placed, and who negotiated and attended to the whole of the transaction as the agent of the complainant,) in answer to an interrogatory, whether any suggestion was made by Mr. Sullivan as to any advantage in the way of security for the rent which would accrue to the complainant by reason of the loan, states Mr. Sullivan's having mentioned, of his own accord, that it would be more secure and more convenient that both the lease and mortgage should be held by one per-

son, observing, at the same time, that it would strengthen the title if the mortgage were taken by a lawyer who was well known. He made this observation, it appears, because Mr. Sands had disputed the title. This testimony does not show it to have been any part of the bargain, that security, in this way, was to be afforded for the rent. It appears to have been a mere casual intimation or suggestion of Mr. Sullivan's, perfectly gratuitous on his part, uncalled for by any thing which Colonel Gibbs may have required of him, and not entering into or forming any part of the terms of the agreement. Besides, it is manifest, that what was thus said had reference as much to the title of the property as to any thing else; for the words, occasion, and manner of using them, admit of this application; and thus it was more secure and convenient to have the mortgage and lease held by one person. John S. Wolcott and William Gracie, the subscribing witnesses to the instruments, and who were present when the money was paid, do not pretend to have any knowledge of such an agreement between the parties, as they heard nothing on the subject at the time. But the evidence most relied upon is, an expression in a letter written by the defendant, Sullivan, to the complainant's counsel shortly before the commencement of this suit, in which he says, " On reference to the registry of mortgages it " will be seen, that the mortgage and the lease were executed " at the same time; they constituted one transaction; and the " lease was made because the money was loaned." This, it is argued, is sufficient to show there was a mutual understanding creating a right of compensating the mortgage debt by the rents *pro tanto*, which could not be defeated. I cannot perceive, however, that such a conclusion follows from what is thus stated. The complainant may have been induced to grant the lease, only because the money was loaned; but how does it appear, from such a circumstance, that he had an absolute security for the rent?

It is true, that so long as Mr. Sullivan, the lessee and mortgagee, remained in possession, with the mortgage unassigned, so long the mortgagor had a right to have the rents applied to the keeping down of the interest and the liquidation of the

1832.

WOLCOTT
v.
SULLIVAN.

principal of the mortgage. But the balance of rent every half year, after paying the interest, he could have enforced in various ways under the covenants contained in the lease against the lessee. The arrangement as made was not one by which the mortgagee was to take possession, as such, under the mortgage itself, and apply the whole of the rents and profits to the liquidation of both the principal and interest of the mortgage, until it should be paid off, or until the mortgagor should come to redeem and call upon him for an account. So far from it, he was to have possession as a tenant by virtue of a lease at a certain rent and for a certain term, to expire when the principal of the debt secured by the mortgage should become payable. These were separate and distinct instruments, although executed at the same time and growing out of one and the same transaction; and in making them, the complainant has not, as far as I can discover, rendered the lease and mortgage inseparable, or taken care to protect himself against the consequences which might grow out of an assignment of the bond and mortgage, like any other *chose in action*. No explicit agreement to this effect is shown; and the form of the instrument, instead of opposing any obstacle, seems to admit the right to assign; the amount being made payable, in the usual manner, to the party, his legal representatives and assigns.

It is, therefore, in vain to say, either from the positive testimony taken in the cause or by necessary implication arising from the circumstances, that the complainant was, by the agreement and understanding of the parties, to have a security for his rent, at all events, for the whole term, in the loan made to him and secured by the bond and mortgage.

In this respect, the defendant does not stand upon any ground more favourable than if he had permitted his mortgagee to take possession under the mortgage without a lease. And if the case had been such an one, then, upon the assignment of the mortgage, the only equity which the mortgagor could claim would have been, to set off what should be due for rents at the time of receiving notice of the assignment. If a mortgagee is suffered to retain possession, the mortgagor, after

there has been an assignment of the mortgage with notice, can
have no right to charge the assignee with the subsequently
accruing rents. His remedy is to evict the original mortga-
gee, or compel him to account and pay an occupation rent for
the time he may thus hold possession after assignment.

So, in the present instance, although the complainant could
not, after notice of the assignment of the mortgage, enter upon
the possession, except for nonpayment of rent under the lease,
yet, by virtue of the covenants, he could have pursued that
and other legal remedies for the recovery of the possession,
or the half-yearly rents as they became due. These remedies
he took care to secure to himself by way of express contract,
when he made the lease, and with these he must be presumed
to have been content until the contrary is made to appear.

There is another circumstance which would seem to show
that no agreement, conferring the right of set off, ought to be
presumed or taken by intendment between the parties: it is
this, there is a want of mutuality in relation to such a right.
If the complainant had suffered the interest on his bond to be
in arrear, and had, notwithstanding, sought his remedy by
distress—as he might have done—against the defendant, Sulli-
van, for rent, (supposing him still to hold the bond and mort-
gage) the latter could not have set off the interest due against
the rent so obtained by distress. Nor would a court of equity
have aided him in such a case: there being no set off at law
of a legal demand against a distress for rent, and equity, on
this point, follows the law; *Townrow* v. *Benson,* 3 *Mad.* 203.

If, therefore, Commodore Hull is to be regarded as an ordi-
nary purchaser of the bond and mortgage, by assignment, I am
of opinion he is to be protected against the rents which accrued
under the lease subsequent to the actual notice of the assign-
ment.

But there is another view of the case, which, in my judg-
ment, strengthens his claim to such a protection. He was
originally the equitable owner of the bond and mortgage.—
Sullivan was but a trustee in taking the securities in his own
name; and, although this fact was concealed from the com-
plainant, it is not sufficient to give him a superior equity over

the defendant, Hull, in the absence of every thing tending to show that, had he been apprised of it at the time, he would have dealt differently with Sullivan in relation to the rent.— All the rights and remedies stipulated for, are preserved to him, although he may be obliged to redeem the mortgage, by paying to the present holder the full amount of principal and interest, free from any deduction for rent which accrued subsequent to notice of the assignment. By notice is meant, actual notice ; the recording of the assignment not being even constructive notice to the purchaser : *James* v. *Morey,* 1 *Cowen,* 246.

Having arrived at this conclusion, it is unnecessary to consider the question in relation to the tender made by the complainant : for, being insufficient in point of amount, the form and manner of making it becomes immaterial. The defendant, Hull is, at all events, entitled to his costs.

Another branch of the case remains to be disposed of, as between the complainant and the defendant, Sullivan.

It has been said, that if, upon redemption, no account is to be taken *of* rents to be set off or deducted from the mortgage, then, Sullivan was unnecessarily made a party, and the bill, as to him, must be dismissed with costs, leaving the complainant to his legal remedy for the rent still due.

It is the general rule, that where the mortgagee has assigned his whole interest, and a bill is filed by the mortgagor for an account only of what is due on the mortgage, and to redeem by paying such amount, there, the mortgagee (as he no longer has any interest in the subject) is not a necessary party : *Edwards on Parties,* 93, *Pl.* 43, and cases there cited; and *Norrish* v. *Marshall,* 5 *Mad.* 475. Still, if there be any circumstances rendering it proper, then the rule is otherwise. Thus, in a note of an *Anonymous Case* in *Freeman,* 59, it is said : " if a mortgagee, in possession, assigneth over, if the " mortgagor prefer his bill, upon supposition that the debt is " satisfied, and to have an account of the surplus, there he " must make the mortgagee and all the assignees parties."— The question of parties in an analogous case arose upon demurrer, in *Whitney* v. *M'Kinney,* 7 *J. C. R.* 144; where a

bill was filed by the assignee of a mortgage for a foreclosure against the mortgagor. The complainant had omitted to make the assignor of the mortgage a party, although an account was to be taken of the rents and profits during the time the mortgee was in possession, for the purpose of ascertaining the credit to which the defendant was entitled. The court held, that the mortgagee was not a necessary party : for the amount of the credit could be ascertained without his presence—he could not be concluded by it one way or the other—it was a question merely between the parties to the suit, as to the extent of the credit—and no relief could be granted on the bill against the mortgagee who had assigned, in respect to the rents and profits, whether more or less, even if he had been a party.

This, however, is not the present case. Nor do the same reasons apply where the mortgagor files a bill to redeem and is entitled, not only to a credit for the rents on his mortgage, but also to an account against the mortgagee and to the payment of the surplus, if any should be due, after the proper credits are allowed on his mortgage as against the assignee. Here, the complainant, as mortgagor, has filed a bill praying an account of what is due for principal and interest, and also on the lease for rents, as well as for permission to redeem. Although it turns out that he is not entitled to a credit on his bond and mortgage for the rents claimed to be due, yet he has a right to an account of such rents against the defendant, Sullivan, who, for this purpose, in connection with the other branch of the case, is properly before the court; and as chancery has obtained jurisdiction for one purpose, it will retain it for all the purposes of the suit : especially as this court, in relation to the rent, is as competent to give relief as a court of law. There is, on this account, no necessity for turning the complainant over to his legal remedy. The amount due for rent can be ascertained by a master ; and to whom I shall refer it.

A question has been made upon the testimony taken on the part of the defendant Sullivan, namely, whether he is entitled to any deduction from the rent: upon the ground of the premises having been suffered to get out of repair and become

1832.

WOLCOTT
v.
SULLIVAN.

untenantable? By the lease, the complainant was bound to keep them in good tenantable condition, with a power to the defendant to make the repairs and deduct the expenses out of the rent, in case the former omitted to do so. So that, if he, the defendant, permitted the premises to become untenantable for the want of necessary reparation, it was his own fault, and he can have no just claim, on this score, to a reduction of the rent—whatever he may have expended for repairs will form a proper charge.

Another ground upon which he claims to be relieved from a half-year's rent is this: his vacating the premises about six months before the expiration of the lease, at the request of the complainant and in order to enable him to deliver the possession to a purchaser. The evidence does not make this out. Indeed, it appears he did not surrender the possession until the first day of May, one thousand eight hundred and thirty-one; and at which time he formally delivered up the key of the house. He is not entitled to a reduction of the rent on this account.

I shall reserve the question of costs, as between the complainant and Mr. Sullivan, as well as all other directions, until the coming in of the master's report; at which time, I shall probably have occasion to notice (what I forbear to do at present) a singular and most extraordinary answer put in to the complainant's bill, and to consider the effect which such a mode of pleading is to have upon a question wherein the court will have to exercise a judicial discretion.