Hall *v.* Fisher.

## HALL *vs.* FISHER & FISHER.

An injunction will not be granted, to restrain a party from instituting proceedings in equity for an account, &c. where the complainant has an equitable defence to such proceedings, which he can set up in his answer.

A deputy sheriff, who sells real estate upon an execution, has the right to authorize a deposit of the redemption money with another person, as his agent for that purpose. And a deposit of the money with such agent, within the time allowed by law for redeeming, will be a valid payment to the deputy, and will constitute a good redemption of the premises from the sale.

Where the sheriff makes a miscalculation of the interest, upon the sum bid by a purchaser, and thereby misleads a party coming to redeem, who in consequence thereof makes a short payment, it *seems* the redemption will, notwithstanding, be held valid and effectual, even at law.

But where the redeeming party makes the calculation for himself, or by an agent employed by him for that purpose, and a mistake occurs, in consequence of which a sum less than the amount due is paid, the redemption will be invalid.

Whether the court out of which the execution issued, could upon an application made, previous to the execution of the sheriff's deed, relieve the redeeming party against the consequences of such a mistake? *Quære.*

Whether a court of equity has power to grant such relief, after the execution of the sheriff's deed to the purchaser? *Quære.*

No injunction should be granted, in such a case, to restrain a suit at law to compel the redeeming party to account for and pay over to the purchaser the rents and profits of the premises sold, without an allegation in the bill showing that the defence of the complainant at law is imperfect, or doubtful.

THIS was an application to dissolve an injunction upon bill and answer. The object of the bill was to compel the defendant H. Fisher to release to the complainant the equal and undivided fourth of certain ore beds in Essex county. The lot

upon which the ore beds were situated originally belonged to
H. Fisher; who, in October, 1837, conveyed to Joseph Hall and
Ephraim Hall the undivided one fourth of the ore beds upon
the lot, together with the privilege of necessary roads, to and
from the ore beds, and such timber, &c. as might be necessary
in digging and conveying away the ore; with the privileges and
appurtenances. A judgment was subsequently recovered in the
supreme court, by J. Brown, against the grantees in that con-
veyance, and it became a lien upon their interest in the prem-
ses, in February, 1838. Under this judgment that interest was
sold by the sheriff, on the first of September in the same year,
and was bid in for the sum of $39 by the defendant C. Fisher;
who purchased in his own name, but in fact for the benefit of
H. Fisher his father, by whom he was sent to bid in the prop-
erty for him. Previous to this sale, but subsequent to the dock-
eting of the judgment, Ephraim Hall had conveyed to the com-
plainant all his interest in the premises. On the 10th of Au-
gust, 1839, the complainant, for himself and as the agent of his
father Joseph Hall, applied to the deputy sheriff who sold the
premises upon the execution on the judgment, and offered to pay
him the requisite amount to redeem the premises from such sale.
But as the deputy had not the certificate, and did not know the
amount to be paid, he told the complainant to call at the county
clerk's office, where the certificate was filed, and deposit the
amount with such clerk; for him, the deputy sheriff. And, as
the bill alleged, the complainant called at the clerk's office the
same day, and informed the clerk of the directions he had re-
ceived from the deputy sheriff, and offered to deposit with him
the amount of money necessary to redeem the premises; the
clerk examined the certificate and computed the amount, which
the complainant deposited with him to redeem the premises for
himself and for the owner of the other eighth part thereof, the
complainant believing the amount thus computed to be the true
sum necessary to redeem the premises. He also took the clerk's
receipt for the amount so paid; which receipt he delivered
to the deputy sheriff on the 17th of the same month, and took
his receipt therefor; specifying that it was for the purchase

Hall *v.* Fisher.

money mentioned in the sheriff's certificate of sale, and the interest thereon at the rate of ten per cent. The complainant also alleged, in his bill, that if the sum paid by him for the redemption of the premises from the sale fell short of the amount of principal and interest due and intended to be paid, the deficiency was not more than thirty cents, and was an accidental error or omission, unknown to him until after the time of redemption had expired; and that such error was occasioned purely by the mistake of the county clerk in computing the amount of interest. He also alleged that in June, 1841, believing that the redemption which had been made was valid, he purchased and took a conveyance from his father Joseph Hall of his one eighth of the ore beds, with their appurtenances.

At the time of the alleged redemption, the complainant was in possession of the whole of the lot upon which the ore beds were situated, and of three fourths of the ore beds, under a lease of the same from the defendant H. Fisher; and of the other one fourth of the ore beds under his father, and in his own right. And after the expiration of the lease of the other three fourths, he continued in possession of that fourth of the ore beds, claiming to be the owner thereof as a tenant in common with H. Fisher, whom he admitted to be the owner of the other three fourths, and of the lot upon which they were situated. In January, 1843, the sheriff, who denied the validity of the alleged redemption by the complainant, conveyed the one fourth of the ore beds, with their appurtenances, to C. Fisher, pursuant to the sale made in September, 1838; who shortly thereafter conveyed the same to his father, for whom he purchased at the sheriff's sale. The complainant, subsequently, upon being informed that the validity of the redemption was disputed, tendered to H. Fisher a sum sufficient to pay the whole redemption money due on the 10th of August, 1839, and the legal interest thereon subsequent to that time, and demanded a release of the premises embraced in the sheriff's deed. H. Fisher refused to accept the money, and insisted upon his right to the possession of the whole of the ore beds; and to an account and payment of the profits arising from the use of the three fourths

thereof subsequent to the conveyance to him from his son. The complainant thereupon filed his bill, in this cause, and obtained an injunction restraining H. Fisher from prosecuting any action or proceeding, either at law or in equity, to compel the complainant to account for and pay the profits of this portion of the premises.

*G. A. Simmons,* for the complainant.

*A. C. Hand,* for the defendants.

THE CHANCELLOR. The injunction was clearly wrong, so far as it restrained the defendant H. Fisher from instituting any proceeding in equity to compel an account and payment of the profits of the one fourth of the ore beds which are in controversy. For if the complainant had an equitable defence to such a suit, it was perfectly competent for him to set it up in answer to a bill filed by the adverse party for such an account. And even if it was necessary to set aside the sheriff's deed, as improperly executed after a valid and effectual redemption of the premises, that object could have been effected by filing a cross-bill.

So far as relates to the right of the deputy sheriff, who sold the premises, to authorize the deposit of the redemption money with the county clerk, as his agent, I should have very little difficulty in coming to the conclusion that such a deposit must be considered as a valid payment to the deputy. The money, between the time of redemption and of the payment thereof to the purchaser at the sheriff's sale, in satisfaction of his bid, must remain somewhere for safe keeping. And if the sheriff had directed the redeeming creditor to deposit the money in a bank, for the sheriff, and to obtain a certificate of such deposit, I think if the redemption money had been so deposited, and the receipt of the proper officer of the bank furnished to the sheriff, within the time allowed by law for redeeming, it should be, at law as well as in equity, construed as a valid payment to the sheriff; so as to render the redemption effectual. A gen-

eral deputy of the sheriff may constitute another person his special agent to hold money for him as a mere depositary. And the fact that such agent is not a man of pecuniary responsibility, does not constitute a legal objection to him, where there is no reason to suppose he will use or misapply the money before it is wanted by the sheriff to pay over to the person entitled to the same. If there was, therefore, a distinct and positive allegation in this bill that the complainant actually paid over to the county clerk the whole amount of the bid, with interest thereon at the rate of ten per cent per annum from the day of the sale, I should not hesitate to declare that the premises were regularly and legally redeemed from the sale. That point, however, is left doubtful in the bill; and I find nothing in the bill to show that the deputy sheriff either constituted or intended to constitute the county clerk his agent, to compute and ascertain the amount which was necessary to be paid to redeem the property. The charge in the bill is that the deputy sheriff directed the complainant to go to the clerk's office, where the certificate was on file, and deposit the amount of the redemption money with the county clerk. The clerk, therefore, being the mere agent of the deputy sheriff to receive the redemption money, after the complainant should have ascertained the amount thereof by an examination of the certificate on file, if the complainant employed such clerk to compute the interest, instead of computing it himself, he is in no better situation than if he had relied upon his own computation; and had made a short payment in consequence of a similar error in the computation.

Where the sheriff himself makes a miscalculation of the interest, and thereby misleads the party coming to redeem, there may be good reason for holding the redemption valid and effectual, even at law; and for charging the sheriff with the deficiency, arising from a short payment through his miscalculation, exclusively. But where, as in this case, the redeeming party is left to make the calculation for himself, or by an agent employed by him for that purpose, I think the redemption is invalid at law; and that the purchaser, who obtains the sheriff's deed of the premises, is entitled to the legal estate. Whether the

court out of which the execution issued, upon an application to its equitable powers previous to the execution of the sheriff's deed, can relieve the person entitled to redeem, against the consequences of such a mistake, or whether this court has any power to grant such relief, after the execution of a sheriff's deed passing the legal title of the premises to the purchaser, are questions which do not properly arise upon this application. For, it does not distinctly appear from the complainant's bill, whether any such mistake has in fact occurred in this case. To raise that question, and to show that the complainant had not a perfect defence at law, he should have stated in his bill that, by a mere mistake in computing the interest, the amount of the redemption money was short of the sum required to make up the full sum mentioned in the sheriff's certificate with interest thereon at the rate of ten per cent per annum; or the complainant should at least have stated that it was doubtful whether the amount paid by him was not too small, owing to an error of the county clerk in computing the interest.

In the absence of such an allegation, showing that the defence of the complainant at law was imperfect, or at least doubtful, the injunction should be dissolved, so as to enable the parties to settle their legal rights in a court of law. The motion to dissolve the injunction must therefore be granted; but without prejudice to the right of the complainant to apply to renew it, upon an amended bill containing the proper allegations in this respect.