BYRON POND, Respondent, v. CAROLINE L. HARWOOD, Impleaded, etc., Appellant.

An action cannot be maintained to restrain the prosecution of a former action in the same court, unless it clearly appears that full and complete justice cannot be done in the earlier action.

While the grant of a temporary injunction is usually discretionary, this is not so with a decree allowing a perpetual stay; to justify this, facts must be shown which, according to the established rules for the administration of equity, will authorize that kind of relief.

Something more than the mere existence of reciprocal and independent demands is required to authorize a set-off in equity, when not allowed under the Statute of Set-offs; circumstances must be shown from which the existence of some intervening equity may be inferred, rendering the interposition of a court of equity necessary for the creditor's protection.

A defendant who, after suit brought against him, purchases without consideration a claim against the plaintiff, with knowledge of the insolvency of the latter, is not in a position to require a court of equity to set off such claim against the demand in suit.

In the absence of evidence of the application by a creditor who holds several demands against the debtor, or by agreement of the parties, or of any equities requiring a different application, payments made by the debtor will be applied in payment of the debt of the longest standing and to the discharge of a debt for which the debtor has given security, in preference to an unsecured demand.

The defendants herein, as residuary legatees under the will of their father, were owners, as tenants in common, of certain lands in another state; plaintiff, acting as their attorney, sold these lands and received the proceeds. After the bringing of an action by defendant C. against plaintiff for an accounting, and for a recovery of her share of the proceeds, and before answer was interposed, he, knowing her to be insolvent, obtained, without consideration, an assignment of a judgment against her, and issued an execution thereon which was returned unsatisfied. Defendants, also, as such residuary legatees, owned an interest of little or no value in certain other real estate. This action was then brought in another county, the relief asked for being : First. The discovery of assets of C., and their application in payment of the judgment against her. Second. An accounting and the set off of his judgment against any balance found due from him to C. Third. A perpetual injunction restraining C. from prosecuting her action. No assets were discovered, either legal or equitable, which could be applied in satisfaction of plaintiff's judgment. *Held*, that plaintiff's action was not maintainable in any of its aspects; that as an action for an accounting all the relief to which plaintiff claims and is entitled could have been

obtained in the action against him; that if defendant J. was a necessary party to a complete determination of the controversy, he could have been brought in as a party to that action.

Where land is conveyed in payment of a debt by deed absolute and without any agreement for a defeasance, a subsequent agreement executed by the grantee, stipulating that if he sells the land he will give the grantor the refusal to purchase, or to find a purchaser, upon the same terms offered to others, or if he sells a portion and realizes enough to pay the debt, he will reconvey the property to the grantor, does not convert the fee into a defeasible estate.

*It seems*, the only remedy of the grantor, in case of failure to perform the agreement, is an action for breach thereof.

(Argued June 7, 1893; decided October 3, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 18, 1891, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Oliver P. Buel* for appellant. A person, whether attorney, agent or other person, standing in a fiduciary relation, cannot purchase a judgment or anything else as to which he has gained information in connection with his client's business, against such client or former client or person to whom he has stood in a fiduciary relation, and be allowed to profit by it. (*Gardner* v. *Ogden*, 22 N. Y. 337; *Arden* v. *Patterson*, 5 Johns. Ch. 44; *Brotherson* v. *Consalus*, 26 How. Pr. 213.) Upon purely statutory grounds the facts disclosed by the evidence on the trial show conclusively that the plaintiff purchased the judgment from Mrs. Judd upon which this action is based both "with the intent and for the purpose of bringing an action thereon;" this the law forbids, branding the transaction as a misdemeanor. (Code Civ. Pro. §§ 73, 75, 77; *Browning* v. *Marvin*, 100 N. Y. 144; *Fowler* v. *Callan*, 102 id. 395; *Abbott* v. *H. R. Co.*, 33 Barb. 594.) The plaintiff is not the real party in interest and cannot, therefore, maintain this action.

(*Zimmerman* v. *Kinkle*, 108 N. Y. 282; *Marie* v. *Garrison*, 83 id. 14; *Killmore* v. *Culver*, 24 Barb. 656.) Where the trust relation of attorney and client has once existed, the attorney will not be allowed in equity to purchase a claim against his client or former client, and enforce the same for more than the amount paid by him. (*Brotherson* v. *Consalus*, 26 How. Pr. 213; *Hitchins* v. *Van Brunt*, 38 N. Y. 343; *Gardner* v. *Ogden*, 22 id. 327.) Harwood was the owner of valuable real estate in Esssex county, upon which said judgment became a lien, upon the docketing thereof, and as to such property the plaintiff had an ample remedy by sale thereof upon execution. The plaintiff was fully informed of the existence of such property, and there was, as to such property, no ground for an application to a court of equity to reach the same until the remedy at law was exhausted. (Code Civ. Pro. § 1871 : *Smith* v. *Hall*, 67 N. Y. 48; *Armstrong* v. *McKelvey*, 107 id. 185; *Forbes* v. *Waller*, 25 id. 430; *Ballow* v. *Jones*, 13 Hun. 629; *Storm* v. *Badger*, 8 Paige, 130; *Platt* v. *Cadwell*, 9 id. 386; *Farquaharson* v. *Kimball*, 9 Abb. Pr. 385.) The judgment against the defendant, Mrs. Harwood, was, before the assignment to the plaintiff, fully paid. (*N. Y. Ins. Co.* v. *N. P. Ins. Co.*, 14 N. Y. 85; Thomas on Mort. § 16; *Randall* v. *Saunders*, 87 N. Y. 578; *N. P. Bank* v. *S. Bank*, 114 id. 28; 2 Pars. on Cont. 630, 631; *Barnard* v. *Onderdonk*, 98 N. Y. 150; *Voorhis* v. *Childs*, 17 id. 356; *Getty* v. *Binsse*, 49 id. 385; *Leake* v. *Lawrence*, 11 Paige, 81; *Smith* v. *Ballantyne*, 10 id. 101; *Risely* v. *Brown*, 67 N. Y. 160; *United States* v. *Price*, 9 How. [U. S.] 92; Code Civ. Pro. § 758; *Randall* v. *Sackett*, 77 N. Y. 480.) But if the conveyance from defendant Harwood to Mrs. Judd of May 30, 1879, shall by any possibility be construed to be a mortgage, the plaintiff's position is even worse. The mortgage debt is, in whole or in part, represented by the judgment upon which this creditor's action is based, and the plaintiff finds himself in the position of seeking by his bill to reach an interest or equity of the defendant Harwood which the statute prohibits being sold on execution, or being interfered with by a cred-

itor's action. (Code Civ. Pro. §§ 1432, 1879; *Tice* v. *Annin*, 2 Johns. Ch. 125; *Delaplaine* v *Hitchcock*, 6 Hill, 14.) The trial court erred in sustaining the plaintiff's demurrer to the defense in the answer of defendant Harwood. (*Arden* v. *Patterson*, 5 Johns. Ch. 44.) The trial court erred in sustaining the demurrer of the plaintiff to the defense in answer of the defendant Harwood, numbered " V." (Code Civ. Pro. § 449.) The referee erred in refusing to find, in answer to defendant Harwood's request for conclusions of law, " That the plaintiff is not entitled to recover in this action upon any alleged account against the defendants jointly," to which she excepted. (Code Civ. Pro. §§ 382, 386, 521, 1204; *Wright* v. *Delafield*, 25 N. Y. 265; *Kay* v. *Whittaker*, 44 id. 576; *Dusenbury* v. *Fisher*, 15 J. & S. 482; *Butler* v. *Johnson*, 111 N. Y. 217; *Prince* v. *Mulford*, 107 id. 308; *In re Accounting*, 95 id. 382; *Carr* v. *Thompson*, 87 id. 160; *Loder* v. *Hatfield*, 71 id. 92; *Pierson* v. *McCurdy*, 33 Hun, 520 : 100 N. Y. 603.)

*Richard L. Hand* for respondent. The judgment is fully justified by the evidence. (Code Civ. Pro. § 1873.) The judgment is wholly due and unpaid. (*Van Rensselaer* v. *Van Rensselaer*, 113 N. Y. 207; *Stimson* v. *Vroman*, 99 id. 74.) Plaintiff was as free to obtain this judgment from Mrs. Judd, and enforce it against Mrs. Harwood, as any man in the State. (Code Civ. Pro. § 73; *Wetmore* v. *Hegeman*, 88 N. Y. 69; *Gleason* v. *Gage*, 7 Paige, 121; *Strange* v. *Longley*, 3 Barb. Ch. 650; *Sheridan* v. *Mayor, etc.*, 68 id. 30; *P. C. Bank* v. *Suydam*, 5 How. Pr. 254.) If any of the rulings of the referee on trial were erroneous, this would be no reason for reversal, as a just result is reached on the whole case. (*McSorley* v. *Hughes*, 12 N. Y. Supp. 179; *Forrest* v. *Forrest*, 25 N. Y. 510.) The answer of the defendant, numbered " IV," is not sufficient in law, and states no facts sufficient to constitute a defense. (*Arthur* v. *Brooks*, 14 Barb. 533; *Richardson* v. *Mead*, 27 id. 178; *Beach* v. *Raymond*, 2 id. 497; *Sheridan* v. *Mayor, etc.*, 68 N. Y. 30; *Moses* v. *McDivitt*, 88 id. 62; *Fay* v. *Hibbard*, 42 Hun, 490; *Rochester*,

*etc., Bank* v. *Suydam,* 5 How. Pr. 254, 262.) The answer numbered " V " is clearly insufficient in law, as the allegations that the plaintiff is not the real party in interest, and that the judgment belongs to Elizabeth Judd, are mere conclusions of law, uniformly held bad on demurrer. (*Fosdick* v. *Groff,* 23 How. Pr. 158; *Hammond* v. *Earle,* 58 How. 426; *White* v. *Drake,* 3 Abb. [N. C.] 133; *Gleason* v. *Youmans,* 9 id. 107.)

MAYNARD, J. The defendants, Caroline L. Harwood and William S. Judd, were the residuary legatees under the will of their father, David Judd, who died May 2nd, 1868, and each was entitled to an equal half of the estate. They thus succeeded to the title of one hundred and sixty acres of land in Wisconsin, of which their father had become the owner by virtue of a bounty land warrant as a soldier in the war of 1812. The plaintiff is an attorney, residing in Essex county, and, as appears from the verified account filed by him in this action, he was the attorney for the defendant, Mrs. Harwood, who alone brings this appeal, from May, 1869, to October, 1882, with respect to various matters connected with her interests in her father's estate, including the Wisconsin lands. He was also, during the same time, the attorney for Mrs. Elizabeth Judd, the widow of David Judd, who, under his will, was entitled to a life estate in the homestead property at Elizabethtown and to an annuity of three hundred dollars, which, for the purposes of this appeal, may be regarded as a charge on the entire estate left by him. Grove M. Harwood, the husband of the appellant and a lawyer, and the brother, William S. Judd, were the executors of the will, and both qualified, but Harwood alone, in fact, acted. The plaintiff was also attorney for the executors in the settlement of the estate, and received assets for collection belonging to the estate, and a suit for an accounting brought by the executors was pending when this action was tried.

The plaintiff, acting as the attorney for the appellant and her brother, sold the Wisconsin lands in 1882 for $900. A

controversy having arisen between the plaintiff and appellant in regard to the application of the proceeds of sale, she brought an equitable action against him on April 7th, 1888, in the Supreme Court in Kings county, where she resided, for an accounting and for the recovery of the moneys due her upon the sale of these lands. Before the time to answer expired plaintiff procured an order extending it thirty days. Meanwhile, on May 5th, he obtained from Mrs. Judd an assignment of a judgment against the appellant, entered by him as attorney January 10th, 1879, for $958, and docketed it and issued execution to Kings county, which was returned unsatisfied May 18th. On May 24th another order extending the time to answer was obtained. June 5th he served his answer and simultaneously brought this action in Essex county, and procured a preliminary injunction order restraining the appellant from the prosecution of her action in Kings county during the pendency of this action. William S. Judd is also made a party defendant here, and the plaintiff seeks relief in this action of a three-fold character. First. The discovery of assets and their application to the payment of his judgment, the usual judgment creditor's remedy. Second. An accounting between himself and the defendants, and the set-off of his judgment against any balance found due the appellant from him. Third. A perpetual injunction restraining the plaintiff from the prosecution of her action in Kings county.

The referee to whom the cause was referred, reported that the plaintiff was entitled to judgment. 1st. Perpetually restraining and enjoining the appellant from prosecuting her action. 2nd. Adjudging that the plaintiff had fully accounted and settled with the defendants concerning all matters between them, and upon such accounting there was nothing due from the plaintiff to the defendants, or either of them, but the defendants are indebted to the plaintiff, exclusive of the judgment, in the sum of $622, of which the appellant should pay $516, and William S. Judd, $106. 3rd. For the enforcement of the judgment of Mrs. Judd assigned to the plaintiff against the equity of redemption of the defendants in the homestead

property, and 4th. For the recovery against the appellant of any balance due on the judgment after applying the avails of the sale of her equity of redemption and the costs of the action. Judgment was accordingly entered, from which this appeal has been taken.

Upon the findings and proofs, we do not think the plaintiff was entitled to any of the relief which has been awarded him.

As a creditor's bill the plaintiff's complaint should have been dismissed, for no assets were discovered, either legal or equitable, which could be applied in satisfaction of his judgment. It is claimed that the appellant had an interest or equity in the homestead property, which could be reached by a creditor's bill, and sufficient to support the action. There is no finding that such interest or equity, if it exists, has any value, and the plaintiff in the complaint avers that it does not exceed $100, and in the affidavit of verification of the complaint, he states that it is not worth anything. But in the view we take of the legal effect of the instrument, under which it is insisted that this interest is created and which will be more fully referred to hereafter, the appellant is not shown to have such a vested right to, or interest in the property, as would render it liable to sequestration by her creditors.

It is apparent from the structure of the complaint and the course of the trial, that the real purpose of the action was to forestall the prosecution of the appellant's suit in equity, and that the vicinage of the forum where the controversy was to be determined, was regarded as a point of great advantage. There can be no doubt that the Supreme Court may, in a proper case, perpetually stay the proceedings of the plaintiff in an equitable action at the suit of his adversary in another equitable action. Formerly the Court of Chancery denied the existence of the jurisdiction, and said that an application for such a stay could scarcely be considered as seriously made. (*Medlock* v. *Cogburn*, 1 Rich. Chy. 477; *McReynolds* v. *Harshaw*, 2 Iredell Chy. 196.)

Although the power now concededly exists, it cannot be arbitrarily asserted. The grant of a temporary injunction is

usually discretionary; but not so with a decree allowing a perpetual stay. Facts must be shown, which, according to the established rules for the administration of equity, will authorize that kind of relief. A subsequent action cannot be maintained to restrain the prosecution of another action in the same court, unless it clearly appears that full and complete justice cannot be obtained in the earlier action. (*Hall* v. *Fisher*, 1 Barb. Ch. 53; *Hayward* v. *Hood*, 39 Hun, 596; *Cowper* v. *Theall*, 40 id. 520; *Erie R. R. Co.* v. *Ramsey*, 45 N. Y. 637; *Savage* v. *Allen*, 54 id. 458; *Wallack* v. *Society*, 67 id. 23.) As was said by Com. REYNOLDS, in *Savage* v. *Allen* (*supra*), "The proposition that a separate action may, under our present system, be maintained to restrain by injunction the proceedings in another suit in the same or another court, between the same parties, where the relief sought in the later suit may be obtained by a proper defense to the former one, has long since been exploded, or, if not, should be without delay."

As an action for an accounting all the relief which the plaintiff claims, and to which he has been found entitled in this action, could have been secured in the appellant's action. If William S. Judd was a necessary party to a complete determination of the controversy he could have been made a party to that action upon motion of the plaintiff in this action, or the court could, upon its own motion, have directed that he be brought in, whenever it appeared in the progress of the action that his presence was required for a full and final adjudication of the rights of the parties. (Code, § 452.) But upon the facts disclosed by the record he does not appear to be a necessary party. The appellant was a tenant in common with him of the Wisconsin lands, and their shares were held in severalty. He has never asserted any equities in her share, or sought to charge her with more than one-half of the expense of the care and sale of the property. He has made default in this action, where he might have been heard if he had any equitable claim against the appellant. It is not shown that the plaintiff had ever received any notice from him that he claimed to be entitled to any part of his sister's

share. As she only sought to recover her equal portion, the plaintiff would have been protected in dealing with her to that extent, in the absence of notice of any equitable demand upon it by her brother. It would thus seem that a complete and final accounting could have been had between the plaintiff and the appellant in her action, without his presence, but if, for any reason, it should be deemed proper by the trial court that he should be brought in, its power is ample to cause it to be done.

Nor was this action maintainable for the purpose of enforcing an equitable set-off of plaintiff's judgment against any balance which might be found due the appellant upon an accounting. Plaintiff was not the owner of the judgment when the appellant's action was brought. He purchased it subsequently with full knowledge of the situation, and of the appellant's insolvency, and paid no value for it. If there is anything due on it, he may enforce it by such appropriate proceedings as the law may authorize; but he cannot invoke the interposition of a court of equity to give him an advantage which at law the ownership of the judgment does not confer upon him. Something more than the mere existence of reciprocal and independent demands is required to authorize a set-off in equity when not allowable under the Statute of Set-offs. Circumstances must be shown from which it can be inferred that one debt was contracted on the faith of the other, or that there was an agreement between the parties that the one should be deducted from the other, or some other intervening equity, which renders the interposition of that court necessary for the creditor's protection. (Willard's Equity Jur. [Potter's ed.] p. 1008.)

As it was stated in *Hackett* v. *Connett* (2 Edw. Ch. 73), "Equity decrees a set-off, independent of the statute, only where mutual debts exist, and where there was neither an express or implied agreement of stoppage *pro tanto*, or mutual credits." In such cases it is allowed; otherwise the just expectation of the parties might be disappointed. (*Wolcott* v. *Sullivan*, 1 Edw. Ch. 399; *Greene* v. *Darling*, 5 Mason, 202; *Hatch* v. *Mayor, etc.*, 82 N. Y. 442.)

It is clear that a purchaser of a debt after suit brought against him, for which he pays nothing and with knowledge of the debtor's insolvency, is not in a position to demand the application of the rule.

But whatever equitable right of set-off the plaintiff had it was available to him in the appellant's action. That was an equitable action where the rule is different than in actions at law, and the right to judgment is not limited to the facts as they existed at the commencement of the action, but the relief administered is such as the nature of the case and the facts, as they exist at the close of the litigation, demand. (*Peck* v. *Goodberlett,* 109 N. Y. 180 ; *Mad. Ave. Bap. Ch.* v. *Oliver St. Bap. Ch.,* 73 id. 82 ; *Worrall* v. *Munn,* 88 id. 137 ; *Gay* v. *Gay,* 10 Paige, 369.)

If upon the trial of the appellant's suit it should appear that there were any equitable reasons why a set-off should be allowed of a debt acquired after the action was brought, it cannot be doubted that the court would have jurisdiction to direct it to be done.

We. therefore, think the plaintiff failed to establish any ground for the maintenance of this action, and that, upon the facts found by the referee, the complaint should have been dismissed.

We are also of the opinion that, upon the uncontroverted facts, it must be held that the plaintiff's judgment was fully paid before the assignment of it by Mrs. Judd. David Judd, the testator, left personal property of the value of at least $15,000, after paying his debts, which was divided in 1868 by the agreement of the parties and without any judicial proceeding, into three parts, the appellant and her brother taking $5,000 each, and $5,000 was left in the hands of the executor Harwood as a fund out of which to raise and pay Mrs. Judd's annuity in half-yearly installments. It may be inferred that Mrs. Judd assented to this arrangement, and from 1868 to 1875 her annuity was paid by Harwood in the manner stipulated. In 1878, Harwood became financially embarrassed and involved the appellant also in his embarrassments. He had given Mrs.

Judd his own drafts for three years' annuities which were unpaid. He was, for purposes of his own, desirous of securing the payment of these drafts, and he was also, evidently, apprehensive that his wife's creditors would seize upon her interest in her father's estate, and, at his instance, she gave Mrs. Judd her note for $928, Nov. 2, 1878, to secure the payment of the past due annuities. In a few weeks after, the plaintiff, acting as the attorney for Mrs. Judd, brought suit upon this note in the Supreme Court, at the request of Harwood, who procured a firm of attorneys to appear for his wife and make an offer, upon which plaintiff entered judgment Jan. 10th, 1879, for $958. In the following May, Harwood requested the plaintiff to issue execution upon the judgment, and upon its return, *nulla bona*, to institute proceedings supplementary to execution and have a receiver of his wife's property appointed in order to anticipate the threatened action of other creditors. Harwood was then at Syracuse, but his wife was temporarily residing with Mrs. Judd at Elizabethtown. She had been instructed by him to do whatever the plaintiff directed. The plaintiff did not institute supplementary proceedings on the judgment as suggested by Harwood, but procured from the appellant a conveyance, May 30th, 1879, of her interest in the real estate in Essex county, owned by her father at his death, consisting mainly of the homestead property; of a lot under contract to one French, and of the undivided one-half of a wild lot. This conveyance was made for an expressed consideration of $400 to apply on the judgment, and appellant gave Mrs. Judd a chattel mortgage upon all her personal property for $584, to secure the balance of the judgment. The plaintiff wrote Harwood, June 2, 1879, informing him that he had taken this course instead of instituting supplementary proceedings, and that he deemed it the better way; that he had issued an execution and had it returned unsatisfied, and as he was on the spot and would know if any hostile judgment creditor undertook to issue execution for the purpose of commencing supplementary pro-

ceedings, he could start such a proceeding at a moment's notice and secure priority.

It is plain that Mrs. Judd was not the moving party in these proceedings. She never demanded or requested any security from the appellant for the payment of her annuity. Conceding that the annuity was a charge upon the real property devised to the appellant, she was not personally liable for its payment. Over eleven years had elapsed since she had received her share of the personal property, with the assent of all the parties interested, and it is not seen how any action or proceeding could have then been maintained to reach that part of the estate. The record admits of but one conclusion. The note was given; the judgment confessed, and the deed and mortgage executed; not because Mrs. Judd sought or required them, but to protect the appellant, acting under the advice of her husband and the plaintiff, from the attack of other creditors, and the correspondence discloses that it was expected by both parties that when the storm had gone by there should be an adjustment of the matter upon the basis of the actual value of the property represented in the transaction. If there were any doubt upon this point, it would be dispelled by the correspondence between Harwood and the plaintiff in regard to the chattel mortgage. On March 3d, 1881, Harwood wrote plaintiff, calling his attention to the existence of this mortgage, and saying: "Of course, both you and Mrs. Judd understand that the object was to protect Carrie in case any other creditor should undertake to make her trouble. I do not think there is any further danger on that score;" and requesting plaintiff to secure a surrender or cancellation of the mortgage. Plaintiff replied on March 15th, requesting a description of the mortgage, its date, amount and place of filing, and saying, if he had these things, he would draw a release and Mrs. Judd would execute it. On the 16th, Harwood sent a release for Mrs. Judd to execute, and on the 19th, the plaintiff returned it duly executed. The plaintiff and Mrs. Judd seem to have promptly acquiesced in the statements made by Harwood as to the object for which the mortgage was given.

In 1880, the plaintiff sent to the defendant, William S. Judd, who was living in the state of Minnesota, a deed to be executed by him to Mrs. Judd of his interest in all the real estate in Essex county owned by his father at the time of his death, and being the same property described in the deed from the appellant to Mrs. Judd. This deed bore the same date as the deed from appellant, May 30, 1879, but was not executed until February 14, 1884. It may here be noted that the value of the property conveyed by the appellant to Mrs. Judd, May 30, 1879, was more than sufficient, according to the estimate then placed upon it by the plaintiff, to satisfy the judgment. The consideration expressed was $400, and it was taken subject to a judgment recovered by the executors of the Buck estate against the testator upon which there was unpaid over $700, making the value of the property conveyed over $1,100. The Buck judgment was not paid out of this property, but the plaintiff ultimately satisfied it out of the avails of the Wisconsin lands sold by him. Or, if the value of the estate then conveyed by the appellant and her brother be taken as estimated by the referee, it reaches the sum of $1,660, or nearly $700 in excess of the judgment.

But the application of the proceeds of these conveyances was finally adjusted on September 14, 1885, when Mrs. Judd received from the executors money and securities to the amount of $1,779. Included in these was a note of the plaintiff's upon which there appeared to be due, for principal and interest, the sum of $539. The receipt stated that it was received by Mrs. Judd, subject to the deductions which the plaintiff might be entitled to, if any, on settlement of his account with the Judd estate. Upon the trial of this action the plaintiff gave no evidence tending to show that he was entitled to any credit upon this note. Mrs. Judd at the same time executed, under her hand and seal, a written instrument in which she certified and declared that the two conveyances from the defendants to her, dated May 30th, 1879, quoting the language used, " were made and delivered to and accepted by me in consideration of the sums then due and to become due

to me on account of my annuity of three hundred dollars per annum under and by said last will of said David Judd, and to apply thereon to the extent of the value of the interests and property so conveyed to me." Then followed an agreement, reciting a consideration of one dollar, that in case she sold any of the real estate the avails should be credited upon the annuity and accounted for to the defendant after deducting all sums due her from the estate and the value of her life estate therein, and that whenever the sums due and to become due her on account of her annuity should be paid she would re-convey whatever remained unsold of the real estate to the defendant; and that she would not sell any of the real estate without notifying the defendants, or one of them, of the proposed terms of sale, and giving them, or one of them, an opportunity to purchase or to procure a purchaser on more favorable terms. It appears by the evidence and findings that the present worth of the defendant's interest in this real estate was then at least $2,030, which, with the payments then made and receipted for, amounted to $3,809. The total of the past due annuities, including those secured by the judgment, and computing interest upon the judgment and each subsequent annuity from the time it fell due, was at that time about $3,700, according to the figures given by plaintiff's counsel. We think that the legal effect of this transaction was to extinguish the judgment as a security in the hands of Mrs. Judd. According to the findings of the referee the appellant had no personal property out of which it could be collected, and the only real property upon which it could be a lien was her interest in the real estate conveyed.

But the plaintiff contends that the note, upon which the judgment was recovered, was given in payment of the annuities, and that the judgment was, therefore, the independent and absolute debt of the appellant, and that the transaction of September 14, 1885, had reference only to the annuities accruing and to accrue subsequently to the giving of the note. But the referee, upon the request of the appellant, has found that the note was given as security for the payment of the annui-

ties then due, and if there is any finding in the report of the referee which is in conflict with it, the finding made at the request of the appellant must control. When the note was merged in the judgment the form only of the obligation was changed, and its character as collateral security remained. When the annuities were paid, which it was given to secure, its life was gone. The payments acknowledged in the receipts of Sept. 14, 1885, amounting to $1,779, would, of themselves, be more than sufficient to discharge the annuities secured by it, and, in the absence of evidence of an application of them by the creditor, or by the agreement of the parties, or of any equities which would require a different application, they would be applied to the payment of the debts of the longest standing in preference to later demands, and to the discharge of a debt for which the debtor has given security in preference to an unsecured demand. (*Dows* v. *Morewood*, 10 Barb. 183; *Thomas* v. *Kelsey*, 30 id. 268; *Thompson* v. *St. Nicholas Bank*, 113 N. Y. 325; *Nat. Park Bank* v. *Seaboard Bank*, 114 id. 28.)

It is insisted that the appellant is not entitled to credit upon the judgment for more than one-half of the value of the property conveyed, inasmuch as her brother was the owner of an undivided half, and the referee has found that the conveyance from him was a gift to Mrs. Judd. A search of the record will fail to disclose any evidence to support this conclusion. In the letter, in which the plaintiff transmitted the deed to William for execution, he states that the object of the conveyance is to compensate Mrs. Judd, in part, for her lost annuities, and she subsequently declares in a sealed instrument that the conveyance was received upon that consideration. But, as between the appellant and her brother, his share of the estate was equally subject with hers to the annuity charge. Whatever sums she might pay or secure for the purpose of discharging the annuities, and thus relieving the real property in which he had an interest, she might still regard in equity as a charge upon his portion for her benefit and enforce reimbursement out of the proceeds thereof to the extent of one-half of the amount

thus paid or secured. Hence, whether the conveyance by him to Mrs. Judd was a gift or not, is immaterial. The property was equitably charged as between himself and sister with his share of the amount which she had paid, or secured on account of the past due annuities, and this charge would survive the conveyance to Mrs. Judd as she was not a purchaser for value. The agreement of Sept. 14, 1885, did not operate to divest Mrs. Judd of the fee of the land which she acquired from the defendants by the conveyances of May 30, 1879, or reduce her estate to that of a mortgagee, or invest the defendants with any interest or equity in the premises. These conveyances were absolute and not conditional and not subject, when made, to any agreement for their defeasance. By the subsequent writing she merely stipulated that if she sold the property, she would give the defendant the refusal to purchase or to find a purchaser upon the same terms offered to others, and if she sold a portion and realized enough to pay what was due or to become due upon her annuity, she would re-convey the residue of the property to the defendants. Such an agreement did not convert the fee into a defeasible estate. (*Kraemer* v. *Adelsberger*, 122 N. Y. 467; *Randall* v. *Sanders*, 87 id. 578; *Macaulay* v. *Porter*, 71 id. 173.) No recourse could be had to the land in case Mrs. Judd disregarded the terms of the agreement. In such an event the only remedy of the defendants would be an action for damages for a breach of the agreement. But the contingency, upon which such a claim might be based, has not happened and the defendants have as yet not acquired any alienable interest in the property by any act of the grantee.

The judgment must be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.