### STANWIX v. LEONARD.

(Supreme Court, Appellate Division, Third Department. March 11, 1908.)

1. CHATTEL MORTGAGES—PAYMENT OF NOTES SECURED—EVIDENCE.

Evidence examined, and *held* to show at least prima facie that notes secured by chattel mortgages were paid before the assignment by the mortgagee to plaintiff of his claims under the mortgages.

**2. PAYMENT—APPLICATION BY CREDITOR.**

Payments made to one holding several different obligations will be first applied to the discharge of the oldest obligations.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Payment, §§ 123, 124.]

**3. CHATTEL MORTGAGES—PAYMENT—PRESUMPTION AS TO APPLICATION.**

It will be presumed that payments made from proceeds of sales by a mortgagor of mortgaged property pursuant to instructions from the mortgagee are intended by the mortgagor to be applied, and actually are applied by the mortgagee to satisfy the specific obligations on account of which the mortgage liens were created.

Appeal from Judgment on Report of Referee.

Action by Mary E. Stanwix against Jesse H. Leonard. Judgment for plaintiff entered upon a referee's report, and defendant appeals. Reversed, referee discharged, and new trial granted.

In 1896 one David H. Stanwix operated a brickyard in the city of Albany, and was the owner of certain horses, wagons, and other personal property used in the business, and also of a quantity of brick. During that year and the next he executed the following instruments:

Chattel mortgage to Jacob H. Clute, dated and acknowledged June 27, 1896, filed in Albany county clerk's office September 30, 1896, covering six horses, also wagons and other personal property, to secure the payment of two notes made by Stanwix and indorsed by Clute, and together amounting to the sum of $475.

Chattel mortgage to said Clute dated and acknowledged July 3, 1896, filed September 30, 1896, covering the same property as the former mortgage, and, in addition, "300,000 brick now standing in arches in the brick-yard of the party of the first part," to secure the payment of a note made by Stanwix and indorsed by Clute in the sum of $200.

Chattel mortgage to said Clute dated and acknowledged September 29, 1896, filed September 30, 1896, covering "the 800,000 brick now contained in the kiln in the brick-yard of the party of the first part," to secure the payment of three notes, one dated June 20, 1896, for the sum of $225, another dated June 27, 1896, for the sum of $250, and the other dated July 30, 1896, for the sum of $200, presumably being the same three notes referred to in the two prior mortgages and "any renewals thereof."

In the first cause of action pleaded defendant is sought to be charged with the value of part of the brick covered by these mortgages, and which was sold by him. The second cause of action arose from the use by the defendant in 1898 of the horses covered by the Clute chattel mortgages mentioned, the plaintiff claiming on quantum valebant and the defendant alleging an agreement with Stanwix to use the horses for their keep. On or about January 12, 1900, this plaintiff, the sister of said Stanwix, paid and took up 11 notes of his amounting to about $2,200, the total amount in full of Clute's then liability upon the notes he had indorsed for Stanwix, and Clute thereupon assigned to plaintiff his claims against defendant constituting the two causes of action mentioned. Judgment was directed by the referee to whom the action was referred in favor of the plaintiff, upon the first cause of action for an amount nearly equal to that demanded in the complaint, and, upon the second cause of action, for the use of the horses alone a greater sum than was demanded in the complaint for this item, although less than the total amount claimed under this cause of action. From this judgment this appeal has been taken.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Lewis E. Carr and Charles Irving Oliver, for appellant.
Lewis Cass, for respondent.

SMITH, P. J. It was a material part of plaintiff's case as assignee of the claims of Clute against this defendant to show a right of action in him prior to the assignment to her. This she attempted by introducing testimony of a delivery to Clute by the mortgagor of the mortgaged property. The mortgagee, however, left Stanwix in actual custody of the property, directing him to sell it, and turn the money over to him, Clute. The title thus shown to have vested in Clute by virtue of his taking possession under his mortgages, although not an absolute one, may be deemed to have vested in him the entire beneficial interest in the property in question for the purposes of this action, while the principal obligation remained unpaid. But if at any time after taking possession of such property, and prior to the assignment, the notes or their renewals, to secure which the respective liens were created, were actually paid by Stanwix, Clute's beneficial interest in the property has lapsed, and the entire title has reverted to Stanwix, the original mortgagor. Such entire title has also carried with it any right of action arising out of the sale of a part of the property or from the use of the property which might have vested in the beneficial owner during the period of his qualified ownership.

Had these notes been paid prior to the assignment? Stanwix, as chief witness for the plaintiff, testified on his redirect examination:

"I sold all of those brick made in 1896, and collected the money with the exception of those that were Leonard's. I collected the money. Every brick that was sold of this brick, manufactured in 1896, I reported the sales to Jacob H. Clute, collected the money, and gave it to him, and he went to the Albany County Bank, and took up those notes. Those were notes that were indorsed by Jacob H. Clute in the Albany County Bank."

Stanwix testified elsewhere that as early as when he began manufacturing brick in 1897 under his agreement with defendant several hundred thousand of the 20-arch kiln of 1896 had already been sold by him. It appears that the value of brick at the yard at this time was about $4 per 1,000. At this price the amount handed over to Clute would be near $3,000. The clear import of the foregoing testimony would seem to constitute at least prima facie proof of the satisfaction and discharge of the three notes amounting to $675, and any possible renewals, to secure which the first three mortgages were given. Payments made to one holding several different obligations will be first applied to the discharge of the oldest obligations. Dows v. Morewood, 10 Barb. 184; Allen v. Culver, 3 Denio, 284. There is also a presumption that payments made from proceeds of sales by a mortgagor of mortgaged property pursuant to instructions from the mortgagee are intended by the mortgagor to be applied, and by the mortgagee actually are applied, to satisfy the specific obligations on account of which the mortgage liens were created. There is no evidence of any other application of these payments by the parties. The plaintiff does not seem to have overcome by proof the presumptions of payment fairly raised by her own evidence, and must accordingly be deemed to have failed to show her right to bring action upon the claims set out in her complaint.

Upon the view of the case here taken, it becomes unnecessary to examine the conflicting testimony given before the referee. The principal

witness on the plaintiff's side appears to have been her brother, the said David H. Stanwix, and it may well have been to his interest, by way of avoiding the setting up of a possible counterclaim by this defendant, to claim that Clute rather than himself continued to be, up to the time of the assignment to the plaintiff, the owner of the causes of action sued on. It follows that an order should be entered reversing the judgment appealed from, discharging the referee and granting a new trial herein, with costs to abide the event.

Judgment reversed on law and facts, referee discharged, and new trial granted, with costs to appellant to abide event. All concur except CHESTER, J., not voting. KELLOGG, J., concurs in result.