## SMITH v. ETTENBERG.

(Supreme Court, Appellate Term. February 8, 1912.)

1. BILLS AND NOTES (§ 256*)—INDORSERS—LIABILITY—DISCHARGE.

That a trust agreement, whereby corporate stock was deposited to secure notes, provided that proceeds of a sale of the stock should be applied to "payment" of the notes, did not discharge an indorser of one of the notes.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 256.*]

2. PAYMENT (§ 41*)—INVOLUNTARY PAYMENTS—APPLICATION.

Involuntary payments, as where proceeds of stock deposited to secure notes are applied, should be applied on equitable principles.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 115–120; Dec. Dig. § 41.*]

3. PAYMENT (§ 46*)—APPLICATION—SECURED AND UNSECURED DEBTS.

Where several notes, due on default in paying one, are secured by collateral, and one has the additional security of an indorsement, payments from the proceeds of the stock should be applied so as to extinguish the indorsed note first.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 125, 126; Dec. Dig. § 46.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Charles H. Smith against Mine Ettenberg. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued January term, 1912, before SEABURY, GERARD, and HOTCHKISS, JJ.

Jacob Bernstein, for appellant.
Edward J. Rowe, for respondent.

HOTCHKISS, J. The case was submitted to the court below on an agreed statement of facts, which are briefly as follows: Plaintiff and one McDermant, in February, 1911, sold to defendant's husband, Morris Ettenberg, 20 shares of the stock of the "Stamford Lunch," being all the stock of the corporation. Besides a cash payment, Morris Ettenberg gave 31 notes, payable to plaintiff, for a total sum of $2,350, maturing in successive months, secured by deposit of said 20 shares with a trustee. The second note to mature, the one here involved, was indorsed by defendant. What other notes, if any, were

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

indorsed, is not shown. The trustee agreement provided that, if default occurred on any note, all should become due, and that, upon such default, the shares held by the trustee should forthwith be sold, and the proceeds applied "in payment of the said notes, and, if there be a surplus, turn the same over to the party of the second part." At the time the agreement between plaintiff and Morris Ettenberg was executed, the Lunch Company executed to plaintiff and McDermant a chattel mortgage on its fixtures to further secure said series of notes. Morris Ettenberg failed to pay the aforesaid notes, and the trustee sold the stock for $490. Subsequently plaintiff, under said chattel mortgage, sold the fixtures for $441. The total sum of $931, thus obtained, was turned over to plaintiff pursuant to the aforesaid agreement.

This action is brought on the second of the above series of notes, and judgment went in plaintiff's favor for the full amount thereof. We are asked to reverse the judgment on two grounds: (1) The proceeds of the sales of the stock were intended to be in full satisfaction of the maker's liability on all the notes; and (2) plaintiff was bound to apply the moneys received from the sale of the shares of stock and the fixtures to the payment of the notes first falling due according to their respective due dates, in either of which events the note in suit would be satisfied.

[1] The first point urged has no merit whatever. The fact that the trustee agreement provides that the proceeds of sale should be applied to the "payment" of the notes, and that provision is made for the payment of any surplus to the debtor, without express words preserving his liability on the notes, in the event of a deficit, is unimportant. The phrases of the agreement are substantially in the traditional form of such instruments, and suggest nothing to support the construction sought to be put upon them, or to contradict the unqualified obligations of the maker as expressed in the notes.

[2, 3] The second point is more serious. The proceeds of the sale were not voluntary payments, and no method for their application was provided for in the contract. Under such circumstances, the law, as between debtor and creditor, will apply them upon equitable principles. Orleans Bank v. Moore, 112 N. Y. 543, 20 N. E. 357, 3 L. R. A. 302, 8 Am. St. Rep. 775. In this case, inasmuch as all the notes became due on default upon any, the entire debt was due, and, no particular equity intervening, as between the debtor and creditor, the payments would be applied pro rata on all of the notes constituting such debt. On the record as it stands, the debtor has given security by way of defendant's indorsement for one note only, to wit, the note in suit, and it does not appear that the creditor holds, by way of defendant's indorsement or otherwise, security for any of the other notes. Under such circumstances, the rule in this state seems to be that the payments should be applied so as to extinguish first the note on which defendant is indorser. Pond v. Harwood, 139 N. Y. 111, 34 N. E. 768. The foregoing views lead to a reversal of the judgment.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.