CITY OF NEW YORK, Plaintiff, *v.* IDLEWILD BEACH Co., INC., et al., Defendants.

City Court of New York, Trial Term, New York County, July 26, 1943.

*Robert H. Schaffer, Acting Corporation Counsel (Albert S. Hartman* of counsel), for plaintiff.

*Nathan D. Shapiro* for defendants.

BYRNES, Ch. J.   Defendant Idlewild Beach Co., Inc., operated a golf course on certain land, a part of which it owned in fee during all of the time involved in this action; since 1937 it occupied the rest of the tract under a lease from defendant Rawick, although until March of that year it had been the owner of the entire property.   Taxes, assessments and metered water charges against all of this property had not been paid since 1930.   The entire property was condemned by the City of New York for use as an airport, and title vested in the City on December 30, 1941. The corporate defendant was awarded $169,300 in the condemnation proceeding and defendant Rawick received an award of $80,000.   The amount paid as compensation for the property belonging in fee to the corporate defendant was more than enough to cover all taxes, assessments and water charges against it, and no consideration need be given in this action to that property or to any of the taxes or other charges against it.   But the taxes, assessments and water charges against the property which at the time of condemnation was owned by Rawick amounted to $115,251.69, exceeding the award on the date of payment ($80,000 and $1,481.64 accrued interest) by $33,707.05.   There is owing to the City for water rents on the Rawick land the sum of $1,283.67 for the period beginning August 28, 1930, and ending December 2, 1941.   During all of those years the said land, constituting a part of the golf course, was occupied by defendant Idlewild Beach Co., Inc.   As above indicated, that company owned it in fee until March 12, 1937, when it conveyed it to defendant Rawick, immediately becoming her tenant.   The water rents during the period of the company's tenancy amounted to $438.63, and for this sum both Rawick, as owner, and Idlewild Beach Co., Inc., as tenant in occupation, are liable.   The latter alone is liable for the water rents accruing from August 28, 1930, to March 12, 1937, the period in which it was owner and also occupant.

Both the owner of the property and the tenant, the actual consumer, are liable to the City for water consumed.   (*Dunbar*

v. *City of New York,* 177 App. Div. 647, affd. on opinion below 223 N. Y. 597, affd. 251 U. S. 516.) The obligation to pay for the use of water supplied by the City, measured by meter, is that of one who makes a voluntary purchase; the duty to pay water rents is derived from an implied contract, and, as pointed out in the *Dunbar* case, the rents are not strictly a tax. (Cf. *Silkman* v. *Board of Water Commissioners,* 152 N. Y. 327, 331; and see *New York University* v. *American Book Co.,* 197 N. Y. 294, 297.) Although there is personal liability, a lien is also given to the City upon the property as security for the payment of the debt (Administrative Code of the City of New York, § 415(1)–7.0; L. 1937, ch. 929): The collection of water charges is not, however, limited to the real estate, for it is provided that '' In addition to collecting water rents, charges, penalties and fines by sale of tax lien, the city may maintain an action for their recovery against the person for whose benefit or by whom the water is taken or used '' (Administrative Code, § 415(1)– 19.0).

It is the contention of defendants that the award in condemnation amounting with interest to $81,481.64 should have been, or should be, applied by the City to the payment of water charges before taxes for which defendants have incurred no personal liability. The defendants have directed the City to make such application of the award. I think it clear that defendants could not direct the City how to apply the award because it was not a fund which came into defendants' possession or over which they had any control. Retention by the City of the award did not constitute a voluntary payment by defendants either of tax arrears or water charges. The right of the City to satisfy its lien for taxes against an award in condemnation is not one conferred upon it by the awardee, but is derived from the law; the lien upon the land for taxes and water rents shifts to the award. (*Matter of City of New York* [*Rockaway Beach*], 288 N. Y. 51; *Muldoon* v. *Mid-Bronx Holding Corp.,* 287 N. Y. 227; *Matter of City of New York* [*Houghton Ave.*], 266 N. Y. 26; *Utter* v. *Richmond,* 112 N. Y. 610; see, also, *Matter of City of New York* [*North Conduit Ave.*], 262 App. Div. 70; *Carpenter* v. *City of New York,* 51 App. Div. 584.) The final decree in condemnation, in conformity with the law, specifically subjected the award '' to all taxes, assessments, water rates and other lawful charges due and unpaid and a lien on the property acquired herein on the 30th day of December, 1941 '' and directed the Comptroller to deduct from the award '' All unpaid taxes, assessments, water rates and other lawful charges which

are liens upon said awards, and upon making such payments to the Treasurer of the City of New York, the City of New York shall be discharged from any and all liability in respect to said awards so paid.''

It is incumbent upon the court, in the circumstances, to determine the proper method of application by the City of the award, for it is beyond the power of the defendants to give any direction, and I find in the evidence no overt act, by any agent of the City having authority, adequate to effect an application. '' But if neither party makes any application of the payment and the matter comes into court, then the court will make such application of the payment as equity and justice require '' (*Bank of California* v. *Webb,* 94 N. Y. 467, 472; cf. *Gescheidt & Co., Inc.,* v. *Bowery Savings Bank,* 251 App. Div. 266, affd. 278 N. Y. 472; *Lichtenstein* v. *Grossman Construction Corp.,* 248 N. Y. 390; *Hanlon* v. *Union Bank of Medina,* 247 N. Y. 389; *Camp* v. *Smith,* 136 N. Y. 187; *Orleans County National Bank* v. *Moore,* 112 N. Y. 543).

Rules governing methods of application are not uniform and differ in various jurisdictions. The majority rule seems to be that application will first be made to an unsecured rather than to a secured debt; that the least secured debt, or the debt for which the security is most precarious, will be paid first, a rule stemming in this country from *Field* v. *Holland* (6 Cranch 8), and recently adhered to in *Lampasona* v. *Capriotti* (296 Mass. 34). This rule, followed in most States, seems not to have found favor in New York, which, in early decisions, gave effect to the civil-law view that secured debts should be paid first. (Cf. *Pattison* v. *Hull,* 9 Cow. 747; *Dows* v. *Morewood,* 10 Barb. 183; and see *Griswold* v. *Onondaga County Savings Bank,* 93 N. Y. 301, 306; also, *Smith* v. *Ettenberg,* 75 Misc. 458, citing *Pond* v. *Harwood,* 139 N. Y. 111 [125].) However, in *Thomas* v. *Kelsey* (30 Barb. 268), decided on another ground, the court indicated its view that moneys collected on execution should be applied to the payment of the unsecured instead of the secured part of the debt (compare cases from various jurisdictions, Note, 97 A. L. R. 345 *et seq.*). The cases which establish the principle that payments received by one holding several different obligations should be first applied to the earliest or oldest obligations, in the order of their accrual, are for the most part concerned with general or running accounts, and analogous situations. Upon analysis, they are found not to relate to or to contemplate separate obligations of a different nature, kind, rank or degree, such as taxes, on the one hand, and, on the other hand, charges

involving personal liability for purchased water. (Cf. *National Park Bank* v. *Seaboard Bank,* 114 N. Y. 28; *Stanwix* v. *Leonard,* 125 App. Div. 299; but see *Truscott* v. *King,* 6 N. Y. 147.)

There is indeed no iron-clad principle of universal governance. In *Carson* v. *Federal Reserve Bank* (254 N. Y. 218, 232) CARDOZO, Ch. J., said: "We have no thought to suggest that this or any other formula as to the application of payments to the items of an account is of such inflexible validity as to admit of no exceptions. Whatever rule is framed will be subordinated to the broader principle that an application, usually appropriate, may be varied by the court when variance is necessary to promote the ends of justice (*Korbly* v. *Springfield Inst. for Savings,* 245 U. S. 330; *Lichtenstein* v. *Grossman Construction Corp.,* 248 N. Y. 390, *supra; Matter of Hallett's Estate,* 13 Ch. Div. 696; *Cunningham* v. *Brown,* 265 U. S. 1, 12, 13)."

It seems just that this award be first applied to the payment of taxes constituting a lien against the property and for which there is no personal liability, leaving intact the obligation of these defendants to pay for the water they purchased. Before condemnation the City was not obliged to resort to the property for the collection of the water charges, being authorized by law to "maintain an action for their recovery" (Administrative Code of the City of New York, § 415(1)–19.0; L. 1937, ch. 929). Its right to "maintain an action" is not diminished as a result of condemnation, and the transference of the City's lien, both for taxes and water rents, from the land to the award leaves unimpaired the personal liability of the owner and occupant of the property for water consumed. Taking into consideration the fact that taxes, as distinguished from water rents, are a charge upon the land only, I believe that these should be first paid out of the award, which is the substitute for the land. The City should be allowed to enforce by action the personal debt incurred in the purchase of its water, which seems to me to stand on an even higher level than a tax, because it represents an indebtedness which the defendants owe to the City for a benefit inuring especially to them, and which, unlike other advantages derived from government, they did not share with other taxpayers. Defendants alone used that water for which they are being charged, and it is fair that the award, which is not large enough to cover taxes and water rents, be so applied as to leave the latter obligation, the personal one, unimpaired.

In any event, the policy of the law governing the collection of taxes should, for analogous reasons, be adhered to in the case of water rents, and that application of the award should be

made which insures the utmost possible collection. In section 415(1)–7.0 of the Administrative Code, it is provided: " All taxes and all assessments and all water rents, and the interest and charges thereon, which may be laid or may have heretofore been laid, upon any real estate now in the city, shall continue to be, until paid, a lien thereon, and shall be preferred in payment to all other charges." That section, read in its entirety, indicates that charges for metered water are to receive the same preferential treatment, in the collection thereof, as taxes. As to the policy of the law in regard to the collection of taxes, compare *Matter of Atlas Television Co.* (273 N. Y. 51, 55); *County of Nassau* v. *Lincer* (254 App. Div. 760, affd. 280 N. Y. 662); *City of Rochester* v. *Kapell* (86 App. Div. 224, affd. on opinion below 177 N. Y. 533); *Pickell* v. *City of Utica* (161 App. Div. 1, 2).

Another defense requiring consideration is based upon the fact that in March, 1941, before the condemnation proceeding was begun, the City had conducted a sale of tax liens upon the property. As there was no outside bid, the City Collector bid in the liens for the City and made " no deposit or payment in cash " (Administrative Code, § 415(1)–29.0). There was, however, no foreclosure of the tax liens in accordance with section 415(1)–39.0. After title to the property had vested in the City as a result of condemnation, in fact after the award had been made, the City canceled the transfers to itself of the tax liens, as it was authorized to do by section 415(1)–24.0 of the Administrative Code. It seems to me that cancellation of these transfers of liens placed both the City and the defendants *in statu quo*. The argument is untenable that the sale by the City to itself of the tax liens constituted a collection of the water rents and an irrevocable election to maintain no personal action for their recovery. When the City becomes the owner of a transfer of tax lien the taxes are not thereby paid or discharged. The purchase of the tax lien transfer is but the first step in the procedure specified in the Administrative Code for the collection of the tax, and the taxes are not " merged " in the transfer of the lien. When the City has purchased a transfer of tax lien it is not in the same position as any other purchaser. It may cancel the transfer (Administrative Code, § 415(1)–24.0), destroying *ab initio* the effect of the sale, and it has rights and remedies which the Administrative Code does not give to other purchasers. The cancellation effected in this case pursuant to section 415(1)–24.0 revived the City's right to maintain an action for the enforcement of personal liability

under section 415(1)–19.0, all parties having been restored to their respective original positions. In this connection it should be noted that the cancellation of the transfers of tax liens had the effect of reducing to 7% the interest penalty of 12% attaching to the transfers of tax liens. In this instance, as a result of such cancellation, tax arrears totaling $115,251.69 were reduced to $99,455.92.

The further defense that the transfers of tax liens were merged in the title acquired by the City in condemnation and that they were thus discharged, and could not after condemnation be canceled, is not valid. (Cf. *Matter of City of New York* [*Houghton Ave.*], 266 N. Y. 26, 29, *supra.*) The acquisition by the City of the property did not in any way discharge the lien of the tax. It is manifest that section 415(1)–34.0 of the Administrative Code has no application to the acquisition of the land by the City in condemnation proceedings. In such case the tax lien, whether transferred to the City or not, attaches to the award. As pointed out by Mr. Justice LOCKWOOD in *Matter of O'Brien* (N. Y. L. J., July 17, 1942, p. 141, col. 3): " The vesting of title does not ' fully pay and discharge ' the tax liens. They are only paid and discharged upon payment of the principal and interest as provided in the Administrative Code. Regardless of equitable considerations, the court is without power to vary or modify these statutory provisions." [Cf. Administrative Code of the City of New York, §§ 415(1)–7.0, 415(1)–29.0, 415(1)–36.0, 415(1)–37.0; also *Matter of City of New York* (*Rockaway Beach*), 288 N. Y. 51, *supra; Muldoon* v. *Mid-Bronx Holding Corp.*, 287 N. Y. 227, *supra; Matter of City of New York* (*Houghton Ave.*), 266 N. Y. 26, *supra.*] Also, as above indicated, the decree in condemnation subjected the award to the payment of " all taxes, assessments, water rates and other lawful charges due and unpaid, and a lien on the property."

The contention of defendants that the document canceling the various transfers of the tax liens was not properly executed is not sustained. I find that the instrument canceling the tax liens was signed by the officials duly authorized to do so on behalf of the City.

The question of the personal liability of the defendants for these water charges was not determined in the condemnation proceeding, and I find that the denial of the City's motion, in that proceeding, to offset water rents which were a lien upon Rawick's property against an award to Idlewild Beach Co., Inc., for land which it owned in fee, does not constitute a

judicial determination of any question presented in the present action.

Attention has been called by the defendants to sections 99 and 99-a of article IV–B of the Tax Law (L. 1940, ch. 303), but that statute has no application here.

The case was tried before the court without a jury. Judgment may be entered in favor of plaintiff against defendant Idlewild Beach Co., Inc., in the sum of $1,283.67 and against defendant Rawick· in the sum of $436.83, with interest, upon each amount, at the rate of 7% per annum from the respective dates that the water charges were entered.

Ten days' stay of execution; sixty days to make a case.